PUBLISH

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
02/14/2000
THOMAS K. KAHN
CLERK

_____

No. 98-2123

_____

D. C. Docket No. 97-42-CR-ORL-18

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

versus

ERIC ALLEN COOPER & ALBERT URBINA,

Defendants-Appellants.

_____

Appeals from the United States District Court
for the Middle District of Florida

_____

**(February 14, 2000)**

Before DUBINA, Circuit Judge, KRAVITCH, Senior Circuit Judge, and NESBITT[*],
Senior District Judge.

_____

[*]Honorable Lenore C. Nesbitt, Senior U.S. District Judge for the Southern District of Florida,
sitting by designation.

KRAVITCH, Senior Circuit Judge:

The principal issue in this appeal is whether criminal defendants had a reasonable expectation of privacy in a hotel room for which they neither paid nor registered. We hold that under the circumstances as alleged by the defendants in their motion to suppress, they did not and thus lacked standing to move to suppress evidence allegedly obtained in violation of the Fourth Amendment to the U.S. Constitution.

## I. BACKGROUND

On January 26, 1997, at approximately 3:45 a.m., Robert Garcia checked into a Sheraton Hotel (the "Sheraton" or the "hotel") in Orlando, Florida, and was assigned to Room 616. He was accompanied by an unidentified male and a minor female later identified as JoAnn Grande, neither of whom actually registered with the hotel. At approximately 5:45 the same morning, Allen Gonzalez checked into the hotel and was assigned to Room 624, the room directly opposite Garcia's. He was also accompanied by an unidentified male who did not register with the hotel. Because both Garcia and Gonzalez proffered the occupancy fees in cash, hotel policy mandated that each present some form of photographic identification; each presented a Florida driver's license, which the hotel desk clerk photocopied. Later

2

that same day, Garcia departed the hotel and allegedly turned the key to Room 616 over to Gonzalez.

Beginning on the evening of January 26, James O'Brien, a security officer employed by a private firm under contract with the Sheraton, witnessed numerous individuals, including Defendants Eric Allen Cooper and Albert Urbina (collectively, "Defendants"), coming and going from the sixth floor of the hotel, particularly during the early morning hours of January 27. On one occasion, O'Brien assisted Defendant Urbina in entering Room 616, as the key Urbina had was not working properly.

Shortly after midnight on January 28, O'Brien received a call from the occupant of Room 618, the room adjoining Room 616. The guest complained that a ringing alarm clock in Room 616 was disturbing his sleep. O'Brien proceeded to Room 616 and knocked on the door several times, receiving no response. O'Brien, using his pass key, entered Room 616 to switch off the alarm. While inside the room, O'Brien noticed in plain view what he assumed to be marijuana. Following what he described as hotel policy, O'Brien immediately exited the room and "pin locked" it to prevent anyone other than himself from accessing the room. He then notified the Orange County Sheriff's Office.

3

After two sheriff's deputies arrived, O'Brien escorted them to Room 616 and granted them entrance. The deputies inspected the room and, concluding several varieties of narcotics were in fact on the premises, requested assistance from a narcotics unit. The narcotics officers conducted on-site tests that confirmed the presence of controlled substances.

O'Brien allowed the officers to lie in wait for the occupants of Room 616 in the adjoining room, Room 618 (its occupant was relocated to another room). Shortly thereafter, Defendants, accompanied by Grande, returned to the hotel. As arranged, O'Brien notified the officers that some of the people he had observed going in and out of Room 616 were *en route* to the sixth floor. Defendants and Grande entered Room 616, at which time the awaiting officers also entered through the adjoining room and arrested all three individuals. The officers searched each suspect: from Defendant Urbina, they recovered the driver's license of Allen Gonzalez and approximately $6500 of United States currency in varying denominations bundled together with rubber bands; from Defendant Cooper, they recovered approximately $1500 of United States currency similarly bundled and a plastic bag containing what were later identified as four broken tablets of flunitrazepam, or Rohypnol, a controlled substance. A complete inventory of Room 616 revealed: approximately 3100 grams of marijuana; approximately 225

4

grams of 3,4-methylenedioxymethamphetamine ("MDMA"), also known by its street name "ecstasy"; approximately 58 grams of Rohypnol; approximately 8 grams of lysergic acid diethylamide ("LSD"); a Colt .38 revolver; $1043 of United States currency; two packages of plastic bags; a pipe used for smoking marijuana; assorted narcotics paraphernalia; and an address book. The street value of the narcotics seized exceeded $33,000.

Defendants were indicted on five narcotics-related counts: one count of conspiracy to possess and distribute narcotics, in violation of 21 U.S.C. § 846 (Count I); and one count of possession with intent to distribute, in violation of 21 U.S.C. § 841(a)(1) and 21 U.S.C. § 2, for each of the four controlled substances found on the premises (Counts II - V). At trial, Defendants moved to suppress all evidence found in the hotel room, asserting the police searched the hotel room and seized the evidence without a warrant and absent exigent circumstances or consent, all in violation of their Fourth Amendment[1] rights. The district court denied the motion, holding Defendants had not alleged sufficient facts to establish they had a "reasonable expectation of privacy" in the hotel room and therefore did not have standing to challenge the search and seizure. Defendants requested an evidentiary

---

[1]"The right of the people to be secure in their person, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched and the persons or things to be seized." U.S. Const. amend. IV.

hearing on the standing issue, but the district court declined to hold one. Cooper and Urbina each were convicted on all five counts of the indictment and sentenced to prison terms of ninety-seven and fifty-one months, respectively.

## II. ANALYSIS

### A. Search of the Motel Room

#### 1. The Motion to Suppress

The Supreme Court long has recognized that the Fourth Amendment's guarantee of freedom from warrantless searches and seizures is not premised on arcane concepts of property and possessory interests; instead, the Fourth Amendment protects an individual in those places where she can demonstrate a reasonable expectation of privacy against government intrusion. See Katz v. United States, 389 U.S. 347, 353, 88 S. Ct. 507, 512 (1967). Such a place can include a hotel room. See Stoner v. California, 376 U.S. 483, 490, 84 S. Ct. 889, 893 (1964). Fourth Amendment rights, however, are personal, and only individuals who actually enjoy the reasonable expectation of privacy have standing to challenge the validity of a government search. See Rakas v. Illinois, 439 U.S. 128, 133-34, 143, 99 S. Ct. 421, 425, 430 (1978). Our initial inquiry, therefore, focuses on whether Defendants established in their motion to suppress that they

6

possessed a reasonable expectation of privacy in Room 616. See id. at 131 n.1, 99 S. Ct. at 424 n.1; United States v. Sneed, 732 F.2d 886, 888 (11th Cir. 1984) (per curiam). We review this mixed question of law and fact *de novo*. See United States v. Cooper, 133 F.3d 1394, 1398 (11th Cir. 1998).

To determine whether an individual has a reasonable expectation of privacy in a hotel room, courts have looked to such indicia as whether the individual paid and/or registered for the room or whether the individual's personal belongings were found inside the room. See United States v. Conway, 73 F.3d 975, 979 (10th Cir. 1995); United States v. Carter, 854 F.2d 1102, 1105 (8th Cir. 1988). Here, Defendants' motion to suppress did not allege such details; instead, Defendants contend their motion's numerous references to the hotel room as "theirs" established their privacy interests. We disagree. "A motion to suppress must in every critical respect be sufficiently definite, specific, detailed, and nonconjectural to enable the court to conclude that a substantial claim is presented. . . . A court need not act upon general or conclusory assertions . . . ." United States v. Richardson, 764 F.2d 1514, 1527 (11th Cir. 1985) (internal citations omitted). Defendants' offhanded references fall far short of meeting this standard, especially considering that Defendants' claim to standing is founded only on their own ultimate conclusion that the hotel room was "theirs," rather than on facts

7

demonstrating that conclusion to be true. Even after the Government raised the issue of standing in its opposition to Defendants' motion to suppress, Defendants failed to amend their motion to provide the specific facts essential to demonstrating a reasonable expectation of privacy in a hotel room. See Sneed, 732 F.2d at 888 (acknowledging that Defendant Sneed failed to amend his motion once his standing was questioned). Moreover, the undisputed trial testimony of O'Brien, the hotel security officer, revealed that Robert Garcia was the individual who actually paid and registered for Room 616, which he later transferred to Allen Gonzalez; this evidence undermines any credible argument that Defendants were the individuals who paid or registered for the room.[2]

In Minnesota v. Olson, 495 U.S. 91, 96-97, 110 S. Ct. 1684, 1688 (1990), the Supreme Court held that overnight guests in the homes of third-persons can have a reasonable expectation of privacy in those premises. On appeal, Defendants argue they were the overnight guests of Gonzalez, thus entitling them to a reasonable expectation of privacy in his hotel room. Whether the privacy interest recognized in Olson extends to the overnight guests of hotel registrants, especially

_____

[2]In their appellate briefs and at oral argument, Defendants suggest "Gonzalez" was actually an alias for either Cooper or Urbina, one of whom used a fraudulent driver's license to check into the hotel. Defendants, however, alleged this fact neither in their motion to suppress nor at trial, and they did nothing to refute O'Brien's testimony that Gonzalez was a distinct individual whom O'Brien witnessed check in. Because Defendants did not develop this "suggestion" in their motion to suppress, they are precluded from doing so for the first time on appeal.

those guests not disclosed to the hotel, is an open question in this circuit. Because

Defendants did not allege in their motion to suppress that they were Gonzalez's

guests, however, we have no occasion to decide the issue.[3] Again, Defendants

advanced no concrete foundation for standing in their motion to suppress. To now

allow Defendants to supplement their motion to suppress with new factual

allegations on appeal would undermine the requirement enunciated in Richardson

that motions to suppress be "definite, specific, detailed, and nonconjectural" when

considered by the district court.

We conclude Defendants' motion to suppress was deficient of any facts that

might have demonstrated that they had a reasonable expectation of privacy in

Room 616. The district court correctly denied Defendants' motion for lack of

standing.

### 2.    The Motion for an Evidentiary Hearing

---

[3]We note that the Supreme Court has qualified the holding of Olson to some extent. In Minnesota v. Carter, __ U.S. __, 119 S. Ct. 469, 474 (1998), the Court held that in order to establish a reasonable expectation of privacy in a third-party's home, an individual must demonstrate she is a guest on the premises for a personal occasion, rather than for strictly a commercial purpose. Because the evidence in this case suggests Defendants were using the hotel room predominantly to engage in narcotics trafficking, Defendants likely would lack standing even if they had been the overnight guests of Gonzalez.

Defendants also appeal the district court's refusal to hold an evidentiary hearing on the issue of standing, arguing that had the district court granted them a hearing, they would have demonstrated a reasonable expectation of privacy in the hotel room. We review the district court's action for abuse of discretion. See Richardson, 764 F.2d at 1527.

As this court held in Sneed:

> [W]here a defendant in a motion to suppress fails to allege facts that if proved would require the grant of relief, the law does not require that the district court hold a hearing independent of the trial to receive evidence on any issue necessary to the determination of the motion.

732 F.2d at 888. Based on our holding that Defendants' motion to suppress was wholly lacking in sufficient factual allegations to establish standing, the district court did not abuse its discretion in refusing to hold an evidentiary hearing. Defendants are not entitled to an evidentiary hearing based on a "promise" to prove at the hearing that which they did not specifically allege in their motion to suppress.

## B. Sufficiency of the Evidence Against Urbina

Urbina separately appeals his convictions on the ground that the evidence adduced at trial was insufficient to prove beyond a reasonable doubt the elements

of the crimes charged.[4]  We review the evidence supporting a guilty verdict to determine whether "a reasonable jury, choosing among reasonable constructions of the evidence, could have found that the defendant was guilty beyond a reasonable doubt."  United States v. Richardson, 764 F.2d 1514, 1524 (11th Cir. 1985) (citing United States v. Bell, 678 F.2d 547, 549 (5th Cir. Unit B 1982) (en banc),[5] aff'd on other grounds, 462 U.S. 356, 103 S. Ct. 2398 (1983)).  All factual and credibility inferences are drawn in favor of the Government.  See Bell, 678 F.2d at 549.

Urbina was convicted of four counts of possession of narcotics with intent to distribute and one count of conspiracy to possess and distribute narcotics.  Urbina argues on appeal that the Government neither established his possession of the narcotics found in Room 616, nor his involvement in the criminal conspiracy.  We find his arguments to be without merit, as the record reveals ample evidence on which a reasonable jury could have predicated its guilty verdicts.

Convictions for the possession of narcotics can be premised on either actual *or* constructive possession, see United States v. Ramos, 666 F.2d 469, 475 (11th

---

[4]In his appellate brief, Cooper adopts those issues raised by Urbina on appeal insofar as they affect Cooper. "[S]ufficiency arguments[, however,] are too individualized to be generally adopted." United States v. Davis, 61 F.3d 291, 296 n.2 (5th Cir. 1995). Cooper therefore has not properly raised the issue on appeal, and we decline to consider it.

[5]Decisions by Unit B of the former Fifth Circuit issued after September 30, 1981, are binding on this court.  See Stein v. Reynolds Sec., Inc., 667 F.2d 33, 34 (11th Cir. 1982).

Cir. 1982), and to prove constructive possession, the Government needed only to demonstrate that Urbina "knew the identity of the substance[s] and exercised dominion and control over [them]," Richardson, 764 F.2d at 1525, which the jury was free to infer from circumstantial evidence. To sustain the conspiracy count, "the [G]overnment [did not need to] prove that [Urbina] had knowledge of all details or phases of a conspiracy[, but only] that [Urbina] knew the essential nature of the conspiracy." United States v. Payne, 750 F.2d 844, 859 (11th Cir. 1985). The trial evidence adequately supports the jury's ultimate conclusions that Urbina at a minimum constructively possessed the narcotics in Room 616[6] and was engaged in the ongoing criminal conspiracy. In addition to observing Urbina frequenting the sixth floor of the hotel at unusual hours of the morning, O'Brien testified that on one occasion, he even assisted Urbina in entering Room 616 because Urbina's key was not working properly, indicating Urbina had authorized access to Room 616 prior to his arrest there.[7] Urbina's recurrent and somewhat

_____

[6]Further buttressing the sufficiency of the evidence of Urbina's guilt on the four possession counts is the fact that those counts also charged Urbina with "aiding and abetting" in the possession of the narcotics. To prove Urbina was an "aider and abetter," the Government needed only to demonstrate Urbina "willfully associated himself with the enterprise to possess the [narcotics] and contributed to its success." Richardson, 764 F.2d at 1525; see also United States v. Hewitt, 663 F.2d 1381, 1385 (11th Cir. 1981). The evidence discussed above also reasonably supports such a finding by the jury.

[7]We recognize Urbina's possession of the key to Room 616 might appear in tension with our earlier holding that Urbina had no expectation of privacy in the hotel room. Aside from Urbina's failure to mention this fact in his motion to suppress, however, other courts have held that possession

12

erratic association with the room where the narcotics were discovered, coupled with the large sum of currency found on his person at the time of his arrest, provide a sufficient foundation for the jury's guilty verdicts on all five counts of the indictment.

## C.   Application of the U.S. Sentencing Guidelines

Each defendant individually appeals his sentence, challenging the district court's application of the United States Sentencing Guidelines (the "Guidelines"). We consider each appeal in turn, reviewing the district court's factual findings for clear error and it application of the Guidelines to those facts *de novo*. See United States v. Trujillo, 146 F.3d 838, 847 (11th Cir. 1998).

### 1.   Cooper's Sentencing Appeal

Pursuant to section 2D1.1(b)(1) of the Guidelines, Cooper was assessed a two-level enhancement in his base offense level for the possession of a firearm during a narcotics-related offense. Cooper objected to the enhancement on the grounds that the Government did not demonstrate at trial that the revolver found in

---

of a key to a hotel room, without more, does not establish a reasonable expectation of privacy in the room. See, e.g., United States v. Conway, 73 F.3d 975, 980 (10th Cir. 1995).

the hotel room belonged to him or, in the alternative, that the revolver was actually connected to the underlying offense. Cooper's first argument fails because, even if the firearm actually belonged to Urbina rather than Cooper, the adjustment was nonetheless proper because the two were co-conspirators with equal dominion over the room where the gun was found. See United States v. Matthews, 168 F.3d 1234, 1248 (11th Cir. 1999).[8] Cooper's alternate argument likewise fails because the Guidelines state "[the enhancement] should be applied if the weapon was *present*, unless it is clearly improbable that the weapon was connected with the offense." U.S. Sentencing Guidelines Manual § 2D1.1 cmt. 3 (1997) (emphasis added). The revolver was found in the hotel room directly under packaged bricks of marijuana, suggesting an active connection with the narcotics enterprise that Cooper does not credibly rebut. The district court therefore correctly assessed the two-level enhancement against Cooper.

---

[8]As Matthews explains:

> A defendant's sentence may also be enhanced for possession [of a firearm] by a co-conspirator if (1) the actual possessor is charged as a co-conspirator; (2) the co-conspirator possessed the firearm in furtherance of the conspiracy; and (3) the defendant who receives the enhancement [(in this case, Cooper)] was involved in the conspiracy at the time of the possession.

168 F.3d at 1248.

14

## 2.	Urbina's Sentencing Appeal

Pursuant to section 4A1.1(c) of the Guidelines, Urbina was assessed one criminal history point for a two-count conviction in 1996 for driving with a suspended license and possessing marijuana, both misdemeanors.  Urbina, unrepresented by counsel, pleaded guilty to both counts and served one day in jail.  Urbina was also assessed three other criminal history points, which, without the additional point for the 1996 conviction, would have placed him in criminal history category II, rather than in category III.  See U.S. Sentencing Guidelines Manual ch. 5, pt. A (1997) (Sentencing Table).  Urbina objected to the assessment of this additional point for the 1996 conviction, arguing the Government had not alleged in his pre-sentence investigative report that Urbina had waived his right to counsel in pleading guilty to the 1996 changes, thus rendering this conviction "presumptively invalid" and unable to be considered in a sentencing proceeding.  Cf. Burgett v. Texas, 389 U.S. 109, 115, 88 S. Ct. 258, 262 (1967) ("To permit a conviction obtained in violation of Gideon v. Wainwright to be used against a person either to support guilt *or enhance punishment for another offense* is to erode the principle of that case.") (emphasis added) (internal citation omitted).

Generally, this court does not allow a defendant to collaterally attack the constitutionality of a conviction for the first time in a sentencing proceeding.  See

15

United States v. Jackson, 57 F.3d 1012, 1018 (11th Cir. 1995); see also U.S. Sentencing Guidelines Manual § 4A1.2 cmt. 6 (1997) ("[T]his guideline and commentary do not confer upon the defendant any right to attack collaterally a prior conviction or sentence beyond any such rights otherwise recognized in law . . . ."). "[W]hen a defendant, facing sentencing, [however,] sufficiently asserts facts that show that an earlier conviction is 'presumptively void,' the Constitution requires the sentencing court to review this earlier conviction before taking it into account." United States v. Roman, 989 F.2d 1117, 1120 (11th Cir. 1993) (en banc) (per curiam). This court has suggested that "presumptively void" convictions "are small in number and are perhaps limited to uncounseled convictions." Id. Although Urbina's 1996 conviction was indeed uncounseled, the burden was on Urbina "to lay a factual foundation for collateral review on the grounds that the state conviction was 'presumptively void.'" Id. As the district court remarked, Urbina did not make this threshold showing, thereby precluding collateral review of the 1996 conviction. Consequently, the district court did not err in assessing Urbina the additional criminal history point and placing him in criminal history category III.

### III. CONCLUSION

16

We AFFIRM the district court's denial of Defendants' motion to suppress, AFFIRM Defendants' convictions on all counts of the indictment, and AFFIRM Defendants' individual sentences.