[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT
_____

No. 04-14722
Non-Argument Calendar
_____

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
March 27, 2006
THOMAS K. KAHN
CLERK

D. C. Docket No. 03-00168-CR-001

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

versus

PATRICK THOMPSON,

Defendant-Appellant.

_____

Appeal from the United States District Court
for the Southern District of Alabama

_____

**(March 27, 2006)**

Before TJOFLAT, DUBINA and HULL, Circuit Judges.

PER CURIAM:

The following corrected opinion without substantive change is substituted

for our March 27, 2006 opinion:

Patrick Thompson appeals his convictions and sentences for conspiracy to possess with intent to distribute powder cocaine and crack cocaine, 21 U.S.C. §§ 841(a)(1), 846; possession with intent to distribute powder cocaine and crack cocaine, 21 U.S.C. § 841(a)(1); and obstruction of justice, 18 U.S.C. §§ 2, 1512(c)(1). After review, we affirm Thompson's convictions, but vacate his sentences.

## I. BACKGROUND

### A. Thompson's Arrest

In June 2003, a confidential informant ("CI") told Corporal Roy Cuthkelvin with the Mobile County, Alabama Sheriff's Department about a man known as "P" who used a 2000 Mercedes and a 2003 Cadillac with Massachusetts registrations to transport kilograms of cocaine from Atlanta to Mobile. On July 14, 2003, Cuthkelvin and another officer observed a brand new Cadillac and a newer-model Mercedes, both with Massachusetts license plates and identical fancy wheels, in the parking lot of an Intown Suites motel. The officers noted the tag numbers and learned that the cars were registered to a Appellant Patrick Thompson. Through the motel, the officers also determined that there was no guest registered as Patrick Thompson, but that one car was listed as belonging to Morris Parsons in room 241.

Later that evening, officers stopped the Mercedes, driven by Thompson,

2

after it entered the motel parking lot.  Thompson denied staying at the motel and indicated that a friend had a room on the third floor.  Thompson consented to a pat-down search, during which officers found four or five hundred dollars and a key to room 241.   Thompson also consented to a search of the Mercedes and the Cadillac.  In the trunk of one car, officers found a plastic bag containing thirteen thousand dollars in cash, a large quantity of jewelry, a plane ticket in the name of Patrick Thompson and some documents bearing the name Morris Parsons.

Cuthkelvin obtained a search warrant for room 241.  During the search, officers discovered, among other things, 1.5 kilograms of cocaine, 217 grams of crack cocaine, digital scales and a receipt in Thompson's name for a storage unit in Massachusetts.  Thompson was arrested.

In a taped phone conversation from jail shortly after his arrest, Thompson asked a woman named Tanya Janice Lee  to empty the Massachusetts storage unit. Lee did as Thompson asked and removed a suitcase containing money, a rusty gun and some crack cocaine.  Lee disposed of the gun, gave the crack to Thompson's brother, gave most of the money to Thompson's father and eventually turned the suitcase with the remaining cash over to the FBI.

B.    **Thompson's First Trial**

Thompson was charged in a six-count indictment with: (1) conspiracy to

3

possess with intent to distribute powder cocaine and crack cocaine (Counts 1 and 2); (2) possession with intent to distribute powder cocaine and crack cocaine (Counts 3 and 4); (3) obstruction of justice (Count 5); and (4) a forfeiture count (Count 6). Thompson moved to suppress the evidence found in the motel room, arguing that the search was conducted before officers secured a search warrant. Thompson attached to his motion a copy of the search warrant signed by the judge and issued at 10:40 p.m. and a copy of Cuthkelvin's arrest narrative stating that the search was executed at 2140 hours, or 9:40 p.m. The district court, Chief Judge Granade, denied Thompson's motion to suppress as untimely.

During the trial before Judge Butler, Cuthkelvin testified that the search of the motel room was conducted only after he obtained the search warrant from the judge and that the time noted in his arrest narrative was a typographical error. Prior to jury deliberations, the government asked the district court to revisit the prior ruling on the motion to suppress in light of Cuthkelvin's testimony about the timing of the search. Judge Butler concluded that Thompson had not been prejudiced by the lack of a suppression hearing because the evidence presented at trial indicated that the room had been searched after the officers had obtained a search warrant, as follows:

> And I'm not going to make a ruling on the motion to suppress as much as I'm going to say that there appears to the Court to have been

4

no prejudice suffered by the defendant by their [sic] not having a suppression hearing to begin with. Because everything that came out in the trial testimony, subject to cross-examination, did not indicate any avenue of possible relief, if you will, from the conclusion that everyone testified to, that the room was searched after the warrant was obtained.

After jury deliberations began, the jury reported that it was hopelessly deadlocked, and the district court declared a mistrial.

## C.    Thompson's Second Trial

In a superseding seven-count indictment, Thompson was charged with the six counts discussed above and an additional count of obstruction of justice. Thompson again moved to suppress the evidence found in the motel room, asserting the untimeliness of the search warrant. The district court, Chief Judge Granade, again denied the motion for lack of standing and based on the law-of-the-case doctrine. After a second trial before Judge Butler presiding, the jury convicted Thompson of all seven counts.

## D.    Sentencing

The Presentence Investigation Report ("PSI") recommended a base offense level of 34 because Thompson was accountable for a marijuana equivalency of 4,640 kilograms. See U.S.S.G. § 2D1.1(c)(3) (2002). The PSI recommended increases of: (1) two levels under U.S.S.G. § 2D1.1(b)(1) because Thompson

possessed a firearm;[1] (2) four levels under U.S.S.G. § 3B1.1(a) because Thompson was a leader or organizer of the conspiracy involving five or more participants; and (3) two levels for obstruction of justice under U.S.S.G. § 3C1.1 because Thompson had concealed and attempted to conceal the evidence in the storage unit. With a total offense level of 42 and a criminal history category of V, Thompson's Guidelines range was 360 months to life imprisonment.

Thompson objected to the PSI's recommendation of a two-level firearm enhancement and a four-level role enhancement. Thompson also objected to the mandatory application of the Guidelines and judicial fact-finding, pursuant to Blakely v. Washington, 542 U.S. 296, 124 S. Ct. 2531 (2004).

During the sentencing hearing before Judge Butler, the government conceded that a four-level role enhancement was inappropriate, and the district court limited the role enhancement to two levels pursuant to U.S.S.G. § 3B1.1(c). The district court overruled Thompson's objection to the firearm enhancement and his Blakely objection. The district court adopted the PSI's calculations (except for the four-level role enhancement). This left Thompson's total offense level at 40, with a criminal history category of V, resulting in a Guidelines range of 360

---

[1]Specifically, the PSI stated that co-conspirator Tanya Lee admitted to authorities that the suitcase she retrieved from Thompson's storage unit in Massachusetts contained a small bag of crack, a gun and money.

months to life imprisonment. The district court rejected Thompson's request for a sentence at the low end of the Guidelines range and sentenced Thompson to 480 months' imprisonment each on Counts 1 through 4 and 240 months' imprisonment each on Counts 5 and 6, all to run concurrently. Thompson timely appealed.

## II. DISCUSSION

### A. Motion to Suppress

Thompson argues that the district court erred by not holding a hearing with regard to his motion to suppress. Thompson contends that he had standing to challenge the search warrant and that the law-of-the-case doctrine did not preclude the district court from resolving the factual issue of whether the search of the motel room was conducted before officers obtained a search warrant. We find no reversible error with regard to the district court's refusal to hold a hearing.

"[A] trial court may refuse a defendant's request for a suppression hearing and motion to suppress if the defendant fails to allege facts that, if proved, would require the grant of relief." United States v. Richardson, 764 F.2d 1514, 1526-27 (11th Cir. 1985). We review a district court's refusal to hold a hearing for abuse of discretion. United States v. Cooper, 203 F.3d 1279, 1285 (11th Cir. 2000). As a threshold inquiry, courts must determine whether a defendant has established standing to bring the motion to suppress by sufficiently alleging that he possessed a

reasonable expectation of privacy in the area searched.  Id. at 1284.

With regard to standing, Thompson admits that he repeatedly and adamantly disclaimed any interest in the motel room on the night of the search. Such a disclaimer of ownership or interest deprives a defendant of the "subjective expectation of privacy to assert standing . . . ."  United States v. Sweeting, 933 F.2d 962, 964 & n.2 (11th Cir. 1991) (concluding that defendants who denied any relationship with their mother's residence except access did not have standing to object to the search, despite fact that government established at trial that defendants actually lived at the residence).

Additionally, Thompson's standing allegations in his motion to suppress were insufficient to justify holding a hearing.  The only fact Thompson alleged in his motion to suppress relating to standing was that the "government contends [room 241] to be a room rented by or to the defendant."  We agree with the district court that this allegation is not sufficient to establish standing.  See Cooper, 203 F.3d at 1284 (holding that defendants' offhand references to hotel room as "theirs" in motion to suppress was too general and conclusory to demonstrate a reasonable expectation of privacy conferring standing and thus district court did not abuse its discretion in refusing to hold a hearing); United States v. Sneed, 732 F.2d 886, 888 (11th Cir. 1984) ("The concepts of due process do not require that a defendant who

8

fails to make the fundamental allegations [of standing] in his motion to suppress be afforded a pretrial hearing on his motion.").

Thompson points to Cuthkelvin's affidavit in support of the search warrant, which was attached to the motion to suppress. In the affidavit, Cuthkelvin averred, among other things, that Thompson was one of two occupants of the motel room and that a key to room 241 had been found on Thompson, but also averred that Thompson had denied staying at the motel. Given that Thompson admits that he repeatedly and adamantly disclaimed any interest in the motel room on the night of the search, we conclude Cuthkelvin's affidavit also did not establish standing for Thompson.

Even assuming Thompson sufficiently alleged standing, Chief Judge Granade's refusal to hold a hearing before ruling on the second motion to suppress was not reversible error. As noted above, during the first trial, Judge Butler made a finding that the search was conducted only after the government obtained a search warrant. Thompson emphasizes that Judge Butler stated at the beginning of his comments that he was not ruling on the motion to suppress. When this phrase is read in context, however, it is clear that Judge Butler meant that he was not changing the earlier ruling on the first motion to suppress, and that he was making a factual finding as additional support for that earlier ruling.

9

Perhaps more importantly, as Chief Judge Granade noted, Thompson's second motion to suppress was "factually identical" to his first motion to suppress. In other words, Thompson presented no new evidence suggesting that Judge Butler's finding was erroneous. Under these circumstances, we cannot say that Chief Judge Granade abused her discretion when she adhered to Judge Butler's earlier factual finding and denied Thompson a hearing to reconsider the issue.

## B. Multiplicity

Thompson also argues that his indictment was multiplicitous because it charged him with separate counts of conspiracy and possession for the crack cocaine (Counts 1 and 3) and cocaine powder (Counts 2 and 4) found in the motel room. "'An indictment is multiplicitous if it charges a single offense in more than one count.'" United States v. Sirang, 70 F.3d 588, 595 (11th Cir. 1995) (quoting United States v. Howard, 918 F.2d 1529, 1532 (11th Cir. 1990)).

Ordinarily, we review de novo whether counts in an indictment are multiplicitous. United States v. Smith, 231 F.3d 800, 807 (11th Cir. 2000). Thompson, however, did not raise a multiplicity challenge prior to trial. Rather, Thompson raised his multiplicity challenge only after the government had rested its case and Thompson moved for a directed verdict. When a defendant fails to object to multiplicitous counts in an indictment prior to trial, he is barred from

10

challenging his convictions and may challenge only his separate sentences.  United States v. Grinkiewicz, 873 F.2d 253, 255 (11th Cir. 1989); Fed. R. Crim. P. 12(b)(3)(B).  More importantly, Thompson received concurrent sentences on the counts he claims were multiplicitous.  Therefore, even assuming arguendo that Thompson's multiplicity claim was correct, any error would be harmless.  See United States v. Langford, 946 F.2d 798, 804-05 (11th Cir. 1991) (finding that multiplicitous securities fraud counts were harmless error because sentences were concurrent).  Accordingly, we find no reversible error with regard to Thompson's concurrent sentences on Counts 1 and 3 (crack cocaine) and Counts 2 and 4 (powder cocaine).[2]

## C.     Constitutional Booker Error

---

[2]In any event, there does not appear to be a multiplicity error with regard to Thompson's sentences.  In this circuit, the simultaneous possession of different controlled substances constitutes separate offenses under 21 U.S.C. § 841(a) for which multiple sentences may be imposed.  See United States v. Davis, 656 F.2d 153, 156-60 (5th Cir. Unit B Sept. 1981) (involving defendant convicted of two counts of possession of a controlled substance under § 841(a), one count for marijuana and one count for qualudes, which resulted in consecutive sentences).  The law has long drawn distinctions between crack cocaine and powder cocaine.  See, e.g., 21 U.S.C. § 841(b)(1)(A)(ii)(II) & (b)(1)(A)(iii); U.S.S.G. § 2D1.1(c); United States v. Sloan, 97 F.3d 1378, 1381-84 (11th Cir. 1996) (explaining the chemical distinctions between crack cocaine and powder cocaine and concluding that the provisions of § 841(b) and U.S.S.G. § 2D1.1 imposing more severe penalties for crack cocaine do not violate the equal protection prong of the Due Process Clause); United States v. Terry, 60 F.3d 1541, 1544-45 (11th Cir. 1995) (explaining that Congress distinguished between crack cocaine and powder cocaine because "crack cocaine is more dangerous, more highly addictive, more easily available, and less expensive than powder cocaine" and finding that the harsher penalties in § 841(b) for crack cocaine do not violate the Equal Protection Clause).  Because Thompson was convicted of possessing and conspiring to possess two different controlled substances – crack cocaine and powder cocaine, he did not receive multiple sentences for the same offense.

11

On appeal, Thompson argues that the district court committed error under United States v. Booker, 543 U.S. 220, 125 S. Ct. 738 (2005), by enhancing his sentences based on facts that he did not admit and that were not proven to a jury beyond a reasonable doubt and by sentencing him under a mandatory Guidelines scheme.[3]

In Booker, the Supreme Court held that Blakely applied to the federal Sentencing Guidelines. United States v. Rodriguez, 398 F.3d 1291, 1297-98 (11th Cir.), cert. denied, 125 S. Ct. 2935 (2005). "Under Booker, there are two kinds of sentencing errors: one is constitutional and the other is statutory." United States v. Dacus, 408 F.3d 686, 688 (11th Cir. 2005). "[T]he Sixth Amendment right to trial by jury is violated where under a mandatory guidelines system a sentence is increased because of an enhancement based on facts found by the judge that were neither admitted by the defendant nor found by the jury." Rodriguez, 398 F.3d at 1298 (emphasis omitted). The statutory error occurs when the district court sentences a defendant "under a mandatory Guidelines scheme, even in the absence of a Sixth Amendment enhancement violation." United States v. Shelton, 400 F.3d 1325, 1330-31 (11th Cir. 2005).

With regard to the constitutional Booker error, Thompson argues that his

---

[3]Because Thompson timely raised a Blakely objection in the district court, we review his Blakely, now Booker, claim de novo. United States v. Paz, 405 F.3d 946, 948 (11th Cir. 2005).

Sixth Amendment rights were violated when the district court calculated his base offense level using drug quantities not based on a jury determination and when it imposed a two-level firearm enhancement.[4]  There was no Sixth Amendment violation as to the drug quantity findings.  Thompson's PSI held Thompson responsible for 1.5 kilograms of cocaine powder and 217 grams of crack cocaine, for a marijuana equivalency of 4,340 kilograms.  Thompson did not object to the factual findings of the PSI, including the drug quantities.  Nor did he object to the calculation of his base offense level using those drug quantities.  Thus, Thompson admitted to being responsible for a marijuana equivalency of 4,340 kilograms.  Accordingly, there was no Sixth Amendment violation with regard to the drug quantity finding.  See United States v. Williams, 438 F.3d 1272, 1274 (11th Cir. 2006) (concluding that, even though defendant's conviction was based on only "five grams or more," the district court's drug quantity finding was not reversible Booker error because defendant's "failure to contest the 37 grams imputed in the PSI constituted an admission of that quantity"); see also United States v. Burge, 407 F.3d 1183, 1191-92 (11th Cir.), cert. denied, 126 S. Ct. 551 (2005); Shelton,

---

[4]Thompson concedes in his supplemental brief that there was no Sixth Amendment violation as to the obstruction-of-justice enhancement because the facts supporting that enhancement were found by the jury beyond a reasonable doubt at Thompson's trial. Specifically, the jury found that Thompson concealed and attempted to conceal currency and documents with the intent to impair their integrity and availability for use at trial.  In addition, Thompson does not challenge the role enhancement, pursuant to U.S.S.G. § 3B1.1(c).  Indeed, at sentencing Thompson agreed that a two-level role enhancement was appropriate.

13

400 F.3d at 1330.

There was, however, a Sixth Amendment violation as to the firearm enhancement. We reverse and remand for resentencing only if the district court's Booker error was not harmless. United States v. Cain, 433 F.3d 1345, 1347 (11th Cir. 2005). For a constitutional Booker error to be harmless, the government "must prove beyond a reasonable doubt 'the mandatory, as opposed to the advisory, application of the guidelines did not contribute to the defendant's sentence.'" Id. at 1348 (quoting United States v. Davis, 407 F.3d 1269, 1271 (11th Cir. 2005)). Here, the government has not met its burden to show that the constitutional Booker error was harmless. "We simply do not know what the sentencing court would have done had it understood the guidelines to be advisory rather than mandatory, and had properly considered the factors in 18 U.S.C. § 3553(a)." Davis, 407 F.3d at 1271.

Accordingly, we affirm Thompson's convictions, but we vacate Thompson's sentences and remand for resentencing consistent with this opinion.[5]

**AFFIRMED IN PART, VACATED AND REMANDED IN PART.**

---

[5]We do not suggest that on remand the district court must impose any particular sentence or that the district court is not free to impose the same sentence. Furthermore, as this is a limited remand to permit the district court to determine what sentence is reasonable and appropriate after considering the now-advisory Guidelines range and the factors set forth in 18 U.S.C. § 3553(a), Thompson may not re-argue issues already or necessarily decided during the first sentencing which either have been affirmed in this appeal or could have been but were not raised by him during this appeal. See United States v. Davis, 329 F.3d 1250, 1252 (11th Cir. 2003) (explaining that when the appellate court issues a limited mandate, "the trial court is restricted in the range of issues it may consider on remand").