**NOT FOR PUBLICATION**

In the

United States Court of Appeals

For the Eleventh Circuit

_____

No. 24-10170
Non-Argument Calendar
_____

UNITED STATES OF AMERICA,

*Plaintiff-Appellee,*

*versus*

BILL MCNAIR,

*Defendant-Appellant.*

_____

Appeal from the United States District Court
for the Northern District of Florida
D.C. Docket No. 5:23-cr-00026-TKW-MJF-1

_____

Before JORDAN, LUCK, and ANDERSON, Circuit Judges.

PER CURIAM:

Bill McNair appeals the denial of his motion to suppress evidence obtained from a search of his vehicle.  Specifically, McNair

contends that the district court erred by denying his motion without a hearing.  After careful review, we affirm.

## FACTUAL BACKGROUND

In early February 2023, Thomas LaRoche, an investigator with the Bay County, Florida Sheriff's Office, received a tip from an informant.  The informant said that McNair was an armed drug trafficker, bringing methamphetamine from Columbus, Georgia into Bay County to distribute.  The informant told LaRoche that McNair took frequent trafficking trips back and forth across state lines and last did so in the first week of February.  McNair took these trips, the informant explained, in an old silver Buick.

With this information, LaRoche showed the informant a picture of McNair, and the informant positively identified him as the armed drug trafficker.  Next, LaRoche checked vehicle registration records and found that McNair had a 2006 silver Buick sedan registered in his name.  The informant also confirmed that this was the vehicle McNair used on his drug trafficking trips.  And LaRoche pulled McNair's arrest record, which showed prior arrests for possessing methamphetamine and cocaine with an intent to distribute.

On February 9, 2023, the informant told LaRoche that McNair planned to take another drug trafficking trip the next day.  Sure enough, LaRoche was able to locate McNair's silver Buick and confirm that it made it to Columbus, Georgia.  Just a few hours later, LaRoche received information that McNair's silver Buick was headed south back to Bay County.

LaRoche rounded up other investigators and a K-9 officer to intercept McNair when he came back. Once McNair reached the Bay County line, the officers found him in his 2006 silver Buick sedan. One of the officers watched him swerve in and out of lanes and tail another car too closely. That officer stopped McNair based on the traffic violations. LaRoche and the K-9 officer were already on the scene to assist the officer initiating the stop.

Once McNair pulled over, LaRoche and the officer initiating the stop smelled marijuana coming from the Buick. At that point, the K-9 officer deployed his narcotics dog who sniffed the outside of McNair's vehicle and signaled that there were drugs inside. The officers then removed McNair from the vehicle and conducted a search to investigate for illegal drugs.

In McNair's trunk, LaRoche found 580 grams of methamphetamine divided into one-ounce plastic bags, 27 grams of cocaine divided into two plastic bags, 45 grams of marijuana in one plastic bag, a scale, and lots of unused plastic bags. In the center console, officers found a smaller amount of marijuana. On the passenger floorboard, officers found a loaded handgun. And there was a receipt from Columbus, Georgia, and a large amount of cash in the vehicle.

Based on the evidence found in his car, the officers arrested McNair and took him to the county jail.

## PROCEDURAL HISTORY

A federal grand jury indicted McNair on two counts. Count one was for possessing a controlled substance with an intent

to distribute, in violation of 21 U.S.C. sections 841(a)(1) and 841(b)(1)(A)(viii). Count two was for possessing a firearm as a felon, in violation of 18 U.S.C. sections 922(g)(1) and 924(a)(8).

McNair then moved to suppress the evidence obtained from the search of his car, arguing that the evidence should be excluded because the search violated his Fourth Amendment rights. McNair didn't challenge the legality of the initial stop. Instead, he contended that the search was unlawful because the officers immediately abandoned the traffic stop to conduct a dog sniff and drug investigation that unreasonably prolonged the traffic stop. McNair also requested an evidentiary hearing because he believed the facts, if taken as true, would entitle him to relief.

The district court denied McNair's motion without a hearing. The district court concluded a hearing wasn't necessary because none of the facts were disputed. Based on the undisputed facts, the district court explained that the officers had probable cause to search McNair's vehicle as soon as they smelled marijuana. So, any delay caused by the dog sniff was immaterial because the officers already had an independent basis to search the vehicle and investigate for drugs. Because the officers had probable cause to search the vehicle, the district court concluded that McNair's Fourth Amendment rights weren't violated by the search and excluding evidence from the search wasn't necessary.

McNair moved for reconsideration, arguing that the smell of marijuana no longer provides probable cause for a vehicle search given that hemp has been legalized federally and medical

marijuana has been legalized in Florida.  Again, McNair asked for an evidentiary hearing to "flesh out exactly what happened during the stop and when."  The district court denied the reconsideration motion.  The district court explained that binding precedent held that the smell of marijuana provides probable cause to search a vehicle and that an evidentiary hearing wasn't required because nothing in McNair's motions raised a factual dispute.

McNair pleaded guilty to both counts but reserved the right to appeal the denial of his suppression motion.  The district court sentenced McNair to 144 months' imprisonment followed by five years of supervised release.  This appeal followed.

## STANDARD OF REVIEW

In reviewing a district court's denial of a motion to suppress, "[w]e review questions of law de novo and questions of fact for clear error, construing the facts in the light most favorable to the prevailing party below."  *United States v. Thomas*, 818 F.3d 1230, 1239 (11th Cir. 2016).  We review a district court's decision not to hold an evidentiary hearing on a suppression motion for an abuse of discretion.  *United States v. Cooper*, 203 F.3d 1279, 1285 (11th Cir. 2000).

## DISCUSSION

McNair argues the district court erred in denying his motion to suppress without a hearing.  We disagree.

A district court "may refuse a defendant's request for a suppression hearing . . . if the defendant fails to allege facts that, if

proved, would require . . . relief." *United States v. Richardson*, 764 F.2d 1514, 1527 (11th Cir. 1985). To be entitled to relief, the defendant's motion "must in every critical respect be sufficiently definite, specific, detailed, and nonconjectural to enable the court to conclude that a substantial claim is presented." *Id*. To raise a substantial claim that evidence should be excluded, McNair had to allege sufficient particularized facts showing that his Fourth Amendment rights were violated. *See Cooper*, 203 F.3d at 1279 ("A court need not act upon general or conclusory assertions." (quotations omitted)).

"The Fourth Amendment protects individuals from unreasonable search and seizure," *United States v. Chanthasouxat*, 342 F.3d 1271, 1275 (11th Cir. 2003) (quotation omitted), and stopping a vehicle is a seizure for Fourth Amendment purposes, *Heien v. North Carolina*, 574 U.S. 54, 60 (2014). To be lawful, the officer "need only reasonable suspicion—that is, a particularized and objective basis for suspecting the particular person stopped" broke the law. *Id*. (quotation omitted). "Even minor traffic violations" can provide a sufficient basis for reasonable suspicion. *United States v. Campbell*, 26 F.4th 860, 880 (11th Cir. 2022) (en banc). Here, no one disputes that the officer who pulled over the Buick had reasonable suspicion for the stop because he saw McNair committing traffic violations.

As to the search, officers can lawfully search a vehicle without a warrant if the vehicle is "operational" and they have "probable cause to believe the vehicle contains contraband or evidence of a crime." *United States v. Tamari*, 454 F.3d 1259, 1261 (11th Cir.

24-10170                Opinion of the Court                7

2006).  We assess whether probable cause existed based on the "to-
tality of the circumstances."  *See United States v. Lindsey*, 482 F.3d
1285, 1293 (11th Cir. 2007).

Here, the officers had three independent sources of probable
cause to believe that McNair's car contained drugs.  First, the offic-
ers smelled marijuana coming from his car.  *See, e.g.*, *Merricks v. Ad-
kisson*, 785 F.3d 553, 560 n.3 (11th Cir. 2015) ("[T]he smell of burnt
marijuana emanating from a vehicle is sufficient probable cause to
search a vehicle." (citing *United States v. Tobin*, 923 F.2d 1506, 1512
(11th Cir. 1991) (en banc)).  Second, the narcotics dog—whose re-
liability went unchallenged—alerted the officers that McNair's car
contained drugs.  *See United States v. Braddy*, 11 F.4th 1298, 1312
(11th Cir. 2021) (citing *Florida v. Harris*, 568 U.S. 237, 243 (2013) ("A
drug detection dog's alert can provide probable cause to conduct a
search," especially when there is evidence of the dog's reliability.)
Third, the officers had credible, specific, and corroborated infor-
mation that McNair used this car to transport illegal drugs from
Columbus to Bay County, and was on his way back from doing so
at the time of the stop.  *See United States v. Amorin*, 810 F.2d 1040,
1041 (11th Cir. 1987) (concluding that a confidential informant's
specific and corroborated tips provided probable cause to search a
vehicle).  Each of these circumstances alone gave the officers what
they needed to lawfully conduct the search.  Taken together, there
was more than enough to establish "probable cause to believe
[McNair's] vehicle contain[ed] contraband."  *Tamari*, 454 F.3d at
1261.  Because McNair didn't allege facts entitling him to suppress
evidence based on a Fourth Amendment violation, the district

court didn't err in denying his motion to suppress without a hearing. *See Richardson*, 764 F.2d at 1527.

Citing *Rodriguez v. United States*, 575 U.S. 348 (2015), McNair counters that the dog sniff led to a Fourth Amendment violation because it "inexcusably prolonged the stop" beyond what was reasonable for a routine traffic stop. At the very least, McNair contends that an evidentiary hearing was necessary to sort out whether the dog sniff led to a Fourth Amendment violation.

This argument fails. In *Rodriguez*, the Supreme Court explained that an officer violates the Fourth Amendment by conducting a dog sniff that prolongs a traffic stop, unless the officer has reasonable suspicion that would justify the delay caused by the dog sniff. *See* 575 U.S. at 355; *accord Braddy*, 11 F.4th at 1310 ("A traffic stop may be prolonged where an officer is able to articulate a reasonable suspicion of other illegal activity beyond the traffic offense." (quotation omitted)). Because it's undisputed that the officers here smelled marijuana and had credible and corroborated information that McNair was on a drug trafficking trip, the officers had more than a reasonable suspicion that McNair's car contained drugs. *See Merricks*, 785 F.3d at 560 n.3; *Amorin*, 810 F.2d at 1041. That justified the delay (if there even was any) caused by the dog sniff. So, McNair's Fourth Amendment rights weren't violated, and the district court didn't err by denying his motion without a hearing.

**AFFIRMED.**