[PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

No. 16-10222

_____

D.C. Docket No. 1:15-cr-20290-JLK-1

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

versus

MIGUEL MONZO,
a.k.a. El Miki,

Defendant-Appellant.

_____

Appeal from the United States District Court
for the Southern District of Florida

_____

(April 7, 2017)

Before MARCUS, JILL PRYOR and SILER,[*] Circuit Judges.

MARCUS, Circuit Judge:

Miguel Monzo appeals his total 120-month sentence, imposed at the low end

of his advisory guideline range and at the statutory mandatory minimum, after

_____

[*]      Honorable Eugene E. Siler, Jr., United States Circuit Judge for the Sixth Circuit, sitting
by designation.

pleading guilty to one count of conspiracy to possess with intent to distribute 50 grams or more of methamphetamine, in violation of 21 U.S.C. §§ 841(a)(1) and (b)(1)(A)(viii), and 846.

On appeal, Monzo argues that: (1) the district court erred in denying his request for a minor-role reduction; (2) the district court erred in assessing three criminal history points for a 2001 Nevada felony drug-possession conviction; and (3) the district court erred in assessing two criminal history points for a 2007 New Mexico misdemeanor concealing-identity conviction.  Concerning the last two issues, Monzo further argues that without the district court's error in assigning these five criminal history points to him, he would have been eligible for relief under the Safety Valve, U.S.S.G. § 5C1.2, which allows a sentencing court to sentence a defendant without regard to any statutory minimum if the defendant does not have more than one criminal history point.  The government responds, among other things, that because Monzo does not challenge one of the criminal history points he received, and because Monzo cannot succeed on both of the criminal history arguments he raises here, any error in one or the other would not have made him eligible for Safety Valve relief.  After careful review, we affirm.

I.

First, we are unpersuaded by Monzo's claim that the district court clearly erred in denying his request for a minor-role reduction.  We review a district

court's denial of a role reduction for clear error.  United States v. Bernal-Benitez, 594 F.3d 1303, 1320 (11th Cir. 2010).  Clear error review is deferential, and "we will not disturb a district court's findings unless we are left with a definite and firm conviction that a mistake has been committed."  United States v. Ghertler, 605 F.3d 1256, 1267 (11th Cir. 2010) (quotations omitted).  The district court's "choice between two permissible views of the evidence" concerning the defendant's role in the offense will rarely constitute clear error "[s]o long as the basis of the trial court's decision is supported by the record and does not involve a misapplication of a rule of law."  United States v. De Varon, 175 F.3d 930, 945 (11th Cir. 1999) (en banc) (quotation and emphasis omitted).  The defendant bears the burden of establishing his minor role by a preponderance of the evidence.  Bernal-Benitez, 594 F.3d at 1320.

The Sentencing Guidelines provide for a two-level decrease to a base offense level if the defendant was a minor participant in the criminal activity.  U.S.S.G § 3B1.2(b).  A minor participant is one "who is less culpable than most other participants in the criminal activity, but whose role could not be described as minimal."  Id., cmt. n.5.  Our leading case concerning the minor-role reduction -- De Varon -- has long instructed district courts considering a minor-role reduction to assess "first, the defendant's role in the relevant conduct for which [he] has been

3

held accountable at sentencing, and, second, [his] role as compared to that of other participants in [his] relevant conduct." 175 F.3d at 940.

In De Varon, the defendant was a drug courier -- she had ingested and smuggled 70 heroin-filled pellets into the United States from Colombia. Id. at 934. We recognized that "when a drug courier's relevant conduct is limited to her own act of importation, a district court may legitimately conclude that the courier played an important or essential role in the importation of those drugs." Id. at 942-43. However, we declined to "create a presumption that drug couriers are never minor or minimal participants, any more than that they are always minor or minimal"; rather, "the district court must assess all of the facts probative of the defendant's role in her relevant conduct in evaluating the defendant's role in the offense." Id. at 943. As examples of relevant facts for the court to consider, we listed the "amount of drugs, fair market value of drugs, amount of money to be paid to the courier, equity interest in the drugs, role in planning the criminal scheme, and role in the distribution." Id. at 945. The en banc Court in De Varon stressed that this is "not an exhaustive list," nor is "any one factor . . . more important than another," especially since the determination is highly fact-intensive and "falls within the sound discretion of the trial court." Id. We ultimately concluded that it was well within the sentencing court's discretion to deny De Varon a minor-role adjustment, after it determined that she was central to the

4

importation scheme; that she had carried a substantial amount of high-purity heroin on her person; that it was unclear from the record that she was less culpable than the other described participant in the scheme; and that she had furnished $1,000 of her own money to finance the smuggling enterprise. Id. at 945-46.

Consistent with De Varon, commentary to the Sentencing Guidelines has laid out factors a court should consider when faced with a minor-role claim:

> (i)     the degree to which the defendant understood the scope and structure of the criminal activity;
>
> (ii)    the degree to which the defendant participated in planning or organizing the criminal activity;
>
> (iii)   the degree to which the defendant exercised decision-making authority or influenced the exercise of decision-making authority;
>
> (iv)    the nature and extent of the defendant's participation in the commission of the criminal activity, including the acts the defendant performed and the responsibility and discretion the defendant had in performing those acts;
>
> (v)     the degree to which the defendant stood to benefit from the criminal activity.
>
> For example, a defendant who does not have a proprietary interest in the criminal activity and who is simply being paid to perform certain tasks should be considered for an adjustment under this guideline.
>
> The fact that a defendant performs an essential or indispensable role in the criminal activity is not determinative. Such a defendant may receive an adjustment under this guideline if he or she is substantially less culpable than the average participant in the criminal activity.

5

U.S.S.G. § 3B1.2  cmt. n.3(C).  The Guidelines' commentary explains further that

"[a] defendant who is accountable under 1.3 (Relevant Conduct) only for the

conduct in which the defendant personally was involved and who performs a

limited function in the criminal activity may receive an adjustment under this

guideline."  U.S.S.G. § 3B1.2 cmt. n.3(A).

Here, Monzo argues that he was entitled to a minor-role adjustment because

he merely acted as a low-level courier for methamphetamine.  But as the en banc

Court said in De Varon, a defendant's status as a courier is not determinative; the

district court must still assess the totality of the circumstances.  175 F.3d at 945.

According to the factual proffer, which was submitted in support of Monzo's guilty

plea, Monzo admitted to packaging methamphetamine and mailing it from Las

Vegas, Nevada to recipients in Miami, Florida, at the direction of the source of

supply for the drugs.  The recipients in Miami would further distribute the

methamphetamine.  Monzo also admitted that he provided bank account

information to the recipients in Miami so that they could deposit the proceeds of

the methamphetamine sales in those accounts.

At the sentencing hearing, the district court found that Monzo had packaged

and mailed "very pure drugs" to drug dealers in Miami, and by doing so, Monzo

had facilitated the flow of the drugs in the country.  The court also found that

Monzo had control over which banks the proceeds from the sale of the drugs went

to by notifying the buyers where to deposit the proceeds. The district court added that Monzo was held responsible only for his own conduct in the conspiracy -- that is, only "for the sales he did on the street." The district court emphasized that it had looked at Monzo's situation "individually," and found that Monzo was a very "important part of the crime." Consistent with De Varon, the district court considered, first, Monzo's role in the conduct for which he was being sentenced, and, second, Monzo's role as compared to others. The district court also considered several relevant factors, including that Monzo participated in the distribution of high-purity methamphetamine, that he directed payment for the methamphetamine, that he was responsible only for his direct role in the conspiracy, and that he was important to the scheme. On this record, we cannot say the district court clearly erred in finding that Monzo did not play a minor role in the offense. Accordingly, we affirm the district court's denial of the minor-role reduction. See De Varon, 175 F.3d at 942-43.[1]

---

[1]    We do, however, raise a concern about some of the district court's comments about the application of the minor-role reduction. In relevant part, the district court said:

> [T]he [drug] courier[] [in general] . . . is an integral and important phase of the drug dealing . . . .

> So this Court has never -- this judge has never accepted the proposition that this is a minor role.

> We look at each situation individually and treat people as human beings individually, but the Court finds that this is a very important part of the crime that was committed.

7

And the act that this particular defendant has pled guilty to involves a receipt of very pure drugs . . . . That's one finding.

The second finding is by packaging or repackaging, that he packaged and mailed on to drug dealers in Miami, he then implemented the flow of this filth, this scourge in this district, in this country.

He implemented that. But for that doing, it wouldn't have gotten here in this crime. It might have been some other way or some other time or some other place being bought or not, but that's very important. . . .

[T]he further aspect of having control over where the payments of the drugs was to the banks by giving the notification to the buyers where to send the money and all that, that objection as to the minor role is overruled and the request for some sort of minor role adjustment is denied.

Doc. 52 at 34-35.

We are concerned with the district court's comment that it has "never" found drug couriers to be minor participants. Indeed, the Guidelines' commentary expressly provides that: (1) "[t]he fact that a defendant performs an essential or indispensable role in the criminal activity is not determinative," U.S.S.G. § 3B1.2  cmt. n.3(C); and (2) "a defendant who is convicted of a drug trafficking offense, whose participation in that offense was limited to transporting or storing drugs and who is accountable under [U.S.S.G. § 1B1.3] only for the quantity of drugs the defendant personally transported or stored <u>may receive</u> an adjustment under this guideline," <u>id</u>. § 3B1.2 cmt. n.3(A) (emphasis added).

Notably, however, Monzo did not raise any question at the sentencing hearing about any of the district court's comments, or even suggest that the district court relied on improper factors in its analysis. And, on appeal, Monzo only has argued generally that he is entitled to a minor-role reduction. <u>See</u> <u>United States v. Massey</u>, 443 F.3d 814, 819 (11th Cir. 2006) ("[F]or a defendant to preserve an objection to her sentence for appeal, [he] must raise that point in such clear and simple language that the trial court may not misunderstand it. When the statement is not clear enough to inform the district court of the legal basis for the objection, we have held that the objection is not properly preserved.") (citations and quotations omitted); <u>United States v. Dennis</u>, 786 F.2d 1029, 1042 (11th Cir. 1986) (noting that to preserve an issue for appeal, "general objections or an objection on other grounds will not suffice"); <u>see also</u> <u>United States v. Jernigan</u>, 341 F.3d 1273, 1283 n.8 (11th Cir. 2003) ("[A] party seeking to raise a claim or issue on appeal must plainly and prominently so indicate. Otherwise, the issue -- even if properly preserved at trial -- will be considered abandoned."). Thus, we doubt that Monzo has adequately preserved the objection or that he has not abandoned it on appeal. <u>See</u> <u>Access Now, Inc. v. Southwest Airlines Co.</u>, 385 F.3d 1324, 1335 (11th Cir. 2004) ("We will not address a claim that has been abandoned on appeal.").

8

II.

We also find no merit to Monzo's claim that the district court erred in assessing three criminal history points for his 2001 Nevada felony drug-possession conviction.  In reviewing a district court's use of the Guidelines, we review purely legal questions de novo, and the district court's factual findings for clear error. United States v. White, 335 F.3d 1314, 1317 (11th Cir. 2003).

In determining a defendant's criminal history category, the Sentencing Guidelines instruct, in relevant part, the following:

> a. Add 3 points for each prior sentence of imprisonment exceeding one year and one month.
>
> b. Add 2 points for each prior sentence of imprisonment of at least sixty days not counted in (a).
>
> c. Add 1 point for each prior sentence not counted in (a) or (b), up to a total of 4 points . . . .

U.S.S.G. § 4A1.1.  A "'sentence of imprisonment' means a sentence of incarceration and refers to the maximum sentence imposed." Id. § 4A1.2(b)(1).  In the case of an indeterminate sentence of one to five years, for example, the stated maximum (or the maximum sentenced imposed), is five years. Id., cmt. n.2.  In

---

But even if we were to assume that Monzo adequately preserved this issue in the district court and has sufficiently advanced it on appeal, it is not clear that the district court erected any per se role for couriers in drug cases.  After all, the court reflected on the facts peculiar to this case, including the very high purity of the methamphetamine, and the role played by the defendant in packaging the controlled substance, and perhaps most notably, in directing the flow of payments to specifically earmarked financial institutions.

making this calculation, "criminal history points are based on the sentence pronounced, not the length of time actually served." Id.  Among the prior sentences of imprisonment allowed to be counted in the calculation of a defendant's criminal history category are "sentence[s] of imprisonment exceeding one year and one month that [were] imposed within fifteen years of the defendant's commencement of the instant offense," or "[a]ny other prior sentence that was imposed within ten years of the defendant's commencement of the instant offense." Id. § 4A1.2(e)(1),(2).

"If part of a sentence of imprisonment was suspended, 'sentence of imprisonment' refers only to the portion that was not suspended." Id. § 4A1.2(b)(2).  In counting a revocation of probation in a defendant's criminal history calculation, the Sentencing Guidelines instruct courts to "add the original term of imprisonment to any term of imprisonment imposed upon revocation." Id. § 4A1.2(k) (emphasis added).  "The resulting total is used to compute the criminal history points for 4A1.1(a), (b), or (c), as applicable." Id.

Here, Monzo argues that the district court erred in assigning three criminal history points for his 2001 Nevada drug-possession conviction because it was not proven that he served more than thirteen months' imprisonment on the conviction, nor was it shown that the sentence was imposed within fifteen years of the instant offense.  We disagree.  It is true that Monzo originally received a suspended

10

sentence for this conviction in state court, and was given two years' probation in October 2001. Had this been the sum total of his sentence associated with the conviction, it would not have triggered additional criminal history points. See U.S.S.G. § 4A1.2(b)(2). However, after being arrested on a probation violation in December 2003, his probation was revoked, and he was sentenced to twelve-to-thirty months' imprisonment in February 2004.

For purposes of calculating Monzo's criminal history points for this conviction, we "add the original term of imprisonment to any term of imprisonment imposed upon revocation." Id. § 4A1.2(k). Monzo claims that the phrase "term of imprisonment" found in § 4A1.2(k) is different from "sentence of imprisonment," and means the amount of time actually served. However, § 4A1.2(k)(1) uses the phrase "term of imprisonment imposed" specifically to describe how the court is to calculate the "sentence of imprisonment" for purposes of § 4A1.1(a). And, notably, the Guidelines consistently use the word "imposed" to refer to the action of a sentencing court. See, e.g., id. § 1B1.4 ("In determining the sentence to impose . . . the court may consider . . . any information concerning the background, character and conduct of the defendant, unless otherwise prohibited by law." (emphasis added)); id. § 1B1.13 ("[T]he court may . . . impose a term of supervised release . . . ." (emphasis added)); id. ch. 5 pt. A, introductory cmt. ("For certain categories of offenses and offenders, the guidelines permit the

11

court to <u>impose</u> either imprisonment or some other sanction or combination of sanctions." (emphasis added)).  What's more, Chapter 4 of the Guidelines consistently -- by our count, about a dozen times -- uses the phrase "term of imprisonment" synonymously with "sentence of imprisonment."  <u>See, e.g.</u>, <u>id.</u> § 4A1.2(c)(1), (k)(1), (k)(2), (o), cmt. n.4, cmt. n.11; <u>id.</u> § 4B1.1 cmt. n.2, cmt. n.3(B), (D); <u>see also</u> <u>United States v. Ramirez-Perez</u>, 643 F.3d 173, 177 (6th Cir. 2011) (holding that "term of imprisonment" in § 4A1.2(k) "has the same meaning" as and is  "interchangeable" with "sentence of imprisonment"); <u>United States v. Jasso</u>, 587 F.3d 706, 710 (5th Cir. 2009) ("We conclude that 'term of imprisonment,' as it appears in § 4A1.2 as a whole, is synonymous with 'sentence of imprisonment' . . . .").  Yet Monzo has pointed to no place in the Guidelines where the phrase "term of imprisonment imposed" somehow refers to actual time served.

Here, the "term of imprisonment imposed upon revocation" by the prior court was the range of twelve-to-thirty months' imprisonment.  Therefore, under the plain language of the Guidelines, the "sentence of imprisonment" Monzo received for this drug-possession conviction was the stated maximum sentence of the range given -- i.e., thirty months.  <u>See</u> <u>id.</u> §§ 4A1.2, cmt. n.2; 4A1.2(k).  This is true regardless of how long Monzo actually served.  <u>Id.</u> cmt. n.2.

Because the thirty-month sentence exceeded one year and one month, the Guidelines recommend that three criminal history points be added to the determination if the prior sentence was imposed within fifteen years of the defendant's commencement of the instant offense.  Id. § 4A1.2(e)(1),(2). According to the factual proffer for the instant offense, which was submitted in support of Monzo's guilty plea, Monzo admitted that "[b]etween August 25, 2014 and February 36, 2015, [he] would send methamphetamine from Las Vegas, Nevada, to recipients in Miami, Florida, at the direction of the source of supply of the drugs."  As a result, under the Guidelines, the sentence of imprisonment for the 2001 felony drug-possession conviction fell within the fifteen-year timeframe, and the district court properly assessed three criminal history points for this offense. Id. §§ 4A1.1(a), 4A1.2(e).

As for Monzo's claim that this conviction was "presumptively void" because the notice of revocation was filed outside his two-year probationary period, we are unpersuaded.  Generally, a defendant cannot collaterally attack the constitutionality of a prior conviction for the first time in a sentencing proceeding.  United States v. Cooper, 203 F.3d 1279, 1287 (11th Cir. 2000).  However, when a defendant "sufficiently asserts facts that show that an earlier conviction is 'presumptively void,' the Constitution requires the sentencing court to review [the] earlier conviction before taking it into account."  Id.  The burden is on the defendant to

13

"lay a factual foundation for collateral review on the ground that the state conviction was 'presumptively void.'" Id.

In the district court, Monzo introduced state court documents apparently indicating that he was placed on two years' probation in October 2001, and that a notice to seek revocation was not filed until January 2004. But, under Nevada law, issuing an arrest warrant tolls the period of probation. See Nev. Rev. Stat. § 176A.500 (2005). Monzo did not show that his probation was not tolled in this manner. Nor did the record otherwise show that Monzo had challenged the revocation in state court. Without something more, Monzo has failed to show that his probation revocation was "presumptively void." Id. Accordingly, the district court did not err in assessing three criminal history points for this prior conviction.

Finally, we can grant no relief based on Monzo's claim that the district court erred in assessing two criminal history points for his 2007 New Mexico misdemeanor concealing-identity conviction for which he received a "credit time served" sentence based on time he spent in custody awaiting adjudication for an unrelated felony. Commentary to the Sentencing Guidelines provides that "[t]o qualify as a sentence of imprisonment, the defendant must have actually served a period of imprisonment on such sentence . . . ." U.S.S.G. § 4A1.2, cmt. n.2. We have not directly addressed whether credit for time served awaiting adjudication on

14

a wholly separate offense qualifies as a period of imprisonment that the defendant "actually served" on the sentence in question.

But even if we assume, arguendo, that Monzo's concealing-identity conviction should not have been counted in the calculation of his criminal history points, any error in assigning this conviction two criminal history points was harmless. While we review de novo legal questions involved in the district court's application of the Guidelines, White, 335 F.3d at 1317, harmless errors must be disregarded. Fed. R. Crim. P. 52. An error is harmless if it "had no substantial influence on the outcome and sufficient evidence uninfected by error supports the decision." Rivers v. United States, 777 F.3d 1306, 1316 (11th Cir.), cert. denied, 136 S. Ct. 267 (2015) (alterations and quotation omitted); see also Fed. R. Crim. P. 52(a) (defining "harmless error" as "[a]ny error, defect, irregularity, or variance that does not affect substantial rights"). An error is not harmless if "there is a reasonable likelihood that [it] affected the defendant's substantial rights." Rivers, 777 F.3d at 1316 (quotation omitted).

Monzo claims that the error was not harmless because he erroneously received five criminal history points that significantly affected his sentence. Without them, he says, he would have only been in a criminal history category I, and would have been eligible for relief under the Safety Valve, U.S.S.G. § 5C1.2. Section 5C1.2 of the Sentencing Guidelines, the "Safety Valve" provision, only

15

allows a sentencing court to sentence a defendant without regard to any statutory minimum sentence if the court finds that the defendant, inter alia, "does not have more than 1 criminal history point, as determined under the sentencing guidelines . . . ." U.S.S.G. § 5C1.2(a).  The statutory mandatory minimum sentence for Monzo's offense -- conspiracy to possess with intent to distribute 50 grams or more of methamphetamine -- is ten years' imprisonment, and the statutory maximum is life imprisonment.  See 21 U.S.C. §§ 841(b)(1)(A) and 846.

In this case, the district court sentenced Monzo to the statutory mandatory minimum sentence of 120 months' imprisonment because he did not qualify for relief under the Safety Valve.  As we've already explained, the district court properly counted and assessed three points for Monzo's Nevada felony drug-possession conviction -- which accounts for three of the five points that Monzo claims were not harmless.  In addition to the three points Monzo received for that conviction, he also received one point for his conspiracy-to-distribute-an-imitation-controlled-substance conviction, resulting in a total of four criminal history points. Monzo does not challenge the point he received for his imitation-controlled-substance conviction.

On this record, even if the district court erred in calculating Monzo's concealing-identity conviction in the computation of his criminal history category, the error was harmless.  Without the two points for his concealing-identity

16

conviction, Monzo still has four criminal history points -- and with more than one criminal history point, he is not eligible for relief under the Safety Valve.  As a result, the district court could not have disregarded the statutory mandatory minimum for his offense.  U.S.S.G. § 5C1.2(a).  Rather, the district court was required to sentence Monzo to at least the statutory minimum sentence of 120 months' imprisonment, which is exactly what he received.  Any claimed error concerning the concealing-identity conviction, therefore, would be harmless, because it had no influence, much less any "substantial influence," on his statutory minimum sentence.  Rivers, 777 F.3d at 1316.

**AFFIRMED**.