[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT
_____

No. 17-10890
Non-Argument Calendar
_____

D.C. Docket No. 8:16-cr-00143-VMC-TGW-1

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

versus

PEDRO GARCIA,

Defendant-Appellant.

_____

Appeal from the United States District Court
for the Middle District of Florida
_____

(May 24, 2018)

Before MARTIN, JULIE CARNES, and HULL, Circuit Judges.

PER CURIAM:

Pedro Garcia appeals his 78-month sentence after pleading guilty to a single count of being a felon in possession of a firearm.  Garcia raises three arguments on appeal.  First, he contends that the district court erred in adopting a guidelines calculation that assigned him three criminal history points based on a June 2001 offense for which he received a four-year youthful-offender sentence that was later modified to probation.  Second, he argues that his sentence was both procedurally and substantively unreasonable because it was based on erroneous facts and failed to account for mitigating factors.  Finally, he asserts that 18 U.S.C. § 922(g) is unconstitutional both on its face and as applied to him.  We address each argument in turn.

## I.

On March 31, 2016, Garcia was charged in a one-count indictment with knowingly possessing a firearm after a felony conviction in violation of 18 U.S.C. §§ 922(g)(1) and (924)(a).  The government later filed a superseding indictment, which added language charging him with possession of ammunition as well.

On November 1, 2016, Garcia pled guilty, without a written plea agreement, to the original indictment.  Because the original indictment did not charge possession of ammunition, the magistrate judge accepting the plea did not ask Garcia about any ammunition.  Nevertheless, the government asked that it be considered relevant conduct at sentencing.  Garcia admitted during the plea hearing

2

that the firearm was made outside of Florida, and therefore must have traveled across state lines to Florida.

The probation office prepared a presentence investigation report ("PSR") which recommended a criminal history score of 14.  This score included three criminal history points for a 2001 conviction for robbery and aggravated battery.  The PSR noted that Garcia had been sentenced as a youthful offender to four years imprisonment, followed by two years of probation.  In 2004, his probation for this sentence was revoked, and Garcia was sentenced to 11 months and 29 days imprisonment.  The PSR also listed criminal convictions for armed vehicular burglary, possession of cocaine, racketeering, and a previous conviction for possession of a firearm by a convicted felon.

Based on this criminal history and the relevant offense level, the PSR recommended an advisory sentence guideline range of 63 to 78 months imprisonment.  The PSR also stated that "[t]he defendant suffers from significant mental health problems," and noted that Garcia had allegedly been sexually assaulted as a minor and had attempted suicide.  The PSR mentioned Garcia's "significant substance abuse problems associated with cocaine and marijuana."

Neither party objected to the facts contained in the PSR or to the application of the sentencing guidelines.  At sentencing, the district court adopted the findings

3

of fact in the PSR and concluded that the advisory guideline range was 63 to 78 months.

The government argued for a sentence in the middle of the guideline range. The district court asked "Why do you think a sentence in the mid-range is your recommendation?  He didn't plead with a plea agreement.  He just pled, right?" The government agreed.  The district court again asked why a mid-range sentence would be appropriate, stating:

> Why would you cut someone some slack and say middle of the range? When you have somebody with this kind of history, why wouldn't you go for the high end of the guidelines?  You already let him plead to the initial indictment as opposed to the Superseding Indictment. Isn't that enough of a benefit?  And he didn't even sign a plea agreement.

The district court stated it was "a little surprised" by the government's position, and that it was "kind of taken aback that's what you've asked for because I think this is somebody with a very significant criminal history."  After the government finished its argument, the district court remarked:

> I think what you have said supports a sentence at the high end, not at the middle of the range. . . .  I'm surprised that's what you're asking for.  And I've been sentencing at the bottom of the range and I've been departing downwards quite a few times, but this gentleman has a very significant criminal history.  I'm thinking about the safety of the public.

Garcia's counsel argued for a sentence "towards the low end."  He highlighted mitigating factors such as substance abuse and "some issues that

happened to Mr. Garcia when he was younger," apparently alluding to the PSR's statement that Garcia had been sexually assaulted in his youth. He also argued that Garcia had merely allowed a friend to store the firearm in his house, and that it did not belong to Garcia.

The district court told Garcia that it had "reevaluated" how it sentenced defendants and that it had been "imposing lower sentences" where possible. However, given Garcia's criminal history, the court said "I just feel that if I don't give a significant sentence, I'm not doing my job to protect the public." After hearing a statement from Garcia, the district court sentenced him to 78 months imprisonment. The district court reached its decision "[a]fter considering the Advisory Sentencing Guidelines and all of the factors identified in [18 U.S.C. § 3553(a)]." Finally, the district court explained to Garcia, "I have given consideration to your mental health problems, your personal characteristics, but your extensive criminal conduct does not warrant and downward variance and, furthermore, warrants a sentence at the highest end of the guidelines." Neither party objected to the sentence.

Garcia appealed.

## II.

We ordinarily review a district court's interpretation of the sentencing guidelines de novo and its factual determinations for clear error. See United States

v. Monzo, 852 F.3d 1343, 1348 (11th Cir. 2017).  An argument raised for the first time on appeal, however, is reviewed for plain error.  United States v. Clark, 274 F.3d 1325, 1326 (11th Cir. 2001) (per curiam).  A "plain error" is any deviation from a legal rule that is "clearly established at the time the case is reviewed on direct appeal."  United States v. Hesser, 800 F.3d 1310, 1325 (11th Cir. 2015) (per curiam).  "[W]here the explicit language of a statute or rule does not specifically resolve an issue, there can be no plain error where there is no precedent from the Supreme Court or this Court directly resolving it."  United States v. Lejarde-Rada, 319 F.3d 1288, 1291 (11th Cir. 2003) (per curiam).  The error must "affect substantial rights," meaning "[i]t must have affected the outcome of the district court proceedings."  United States v. Olano, 507 U.S. 725, 734, 113 S. Ct. 1770, 1777–78 (1993) (quotation omitted and alteration adopted).  We may correct the error if it "seriously affects the fairness, integrity, or public reputation of judicial proceedings."  United States v. McKinley, 732 F.3d 1291, 1296 (11th Cir. 2013) (per curiam) (quotation omitted).

## III.

Garcia argues the district court erred by assigning three criminal history points to his 2001 conviction for robbery and aggravated battery because his sentence was reduced to probation when he completed a youthful offender program.

In calculating a defendant's criminal history category, three points are assigned "for each prior sentence of imprisonment exceeding one year and one month." United States Sentencing Guidelines § 4A1.1(a). "[C]riminal history points are based on the sentence pronounced, not the length of time actually served." Id. § 4A1.2 cmt. n.2. All sentences imposed within ten years of the offense of conviction are counted, as are any sentences imposed or served within fifteen years of the offense if the sentence exceeded thirteen months imprisonment. Id. § 4A1.2(e)(1)–(2). Any sentence falling outside these time periods is not counted. Id. § 4A1.2(e)(3).

Where a sentence is imposed as the result of a probation violation, the guidelines instruct as follows: "[A]dd the original term of imprisonment to any term of imprisonment imposed upon revocation. The resulting total is used to compute the criminal history points . . . ." Id. § 4A1.2(k)(1). That is, instead of counting the original sentence and sentence after revocation separately, "the sentence given upon revocation should be added to the original sentence of imprisonment . . . and the total should be counted as if it were one sentence." Id. § 4A1.2 cmt. n.11.

Under Florida law, defendants sentenced as youthful offenders can participate in a basic training program lasting at least 120 days, not counting time served prior to the program. Fla. Stat. § 958.045(1), (5)(c). "If the youthful

offender's performance is satisfactory, the court shall issue an order modifying the sentence imposed and place the offender on probation subject to the offender successfully completing the remainder of the basic training program." Id. § 958.045(5)(c).  We have not addressed how a Florida youthful-offender sentence modified to probation upon completion of a training program impacts a defendant's criminal history score.  We have, however, held that other youthful-offender convictions count toward a defendant's criminal history score and sentencing enhancements.  See United States v. Wilks, 464 F.3d 1240, 1242–44 (11th Cir. 2006) (holding that Florida youthful-offender convictions "can qualify as a predicate offenses for sentence enhancement[s]"); United States v. Pinion, 4 F.3d 941, 945 (11th Cir. 1993) (discussing South Carolina's youthful-offender program).

The district court did not plainly err in adopting a guideline calculation that assigned Garcia three criminal history points for the June 2001 offense.  The guidelines do not specifically address, and no binding precedent holds, that once a Florida youthful-offender sentence is modified to probation, the probationary sentence replaces the original sentence of imprisonment for purposes of calculating a defendant's criminal history score.  See Lejarde-Rada, 319 F.3d at 1291.  If the original sentence remains valid, then application of the guidelines is clear: Garcia's original four-year sentence—plus a 364-day term imposed when Garcia's

8

probation was later revoked—was in excess of thirteen months, and imposed within fifteen years of the offense of conviction, so it is assigned three criminal history points.  See USSG §§ 4A1.1(a), 4A1.2(e)(1), (k)(1).  Therefore the district court did not plainly err in assigning three criminal history points to this conviction.

## IV.

Garcia next argues his sentence was procedurally and substantively unreasonable.

## A.

In examining procedural reasonableness, we must "ensure that the district court committed no significant procedural error, such as failing to calculate (or improperly calculating) the Guidelines range, treating the Guidelines as mandatory, failing to consider the [18 U.S.C.] § 3553(a) factors, selecting a sentence based on clearly erroneous facts, or failing to adequately explain the chosen sentence."  Gall v. United States, 552 U.S. 38, 51, 128 S. Ct. 586, 597 (2007).  "A factual finding is clearly erroneous when, although there is evidence to support it, we are left with the definite and firm conviction, after review of the entire evidence, that a mistake has been made."  United States v. Hill, 783 F.3d 842, 846 (11th Cir. 2015) (per curiam).

Garcia argues the sentence was procedurally unreasonable because the district court relied on three erroneous facts, namely: (1) that he received a benefit by entering a guilty plea without having to sign a plea agreement; (2) that he received a benefit from pleading to the original indictment and not the superseding indictment; and (3) that he received a benefit from being prosecuted in federal court, rather than state court.  We are not persuaded.  The district court's statements were accurate.  Garcia did plead guilty to the original federal indictment, without signing a plea agreement.  Indeed, this did benefit Garcia in a couple of ways.  First, by pleading without a plea agreement he did not waive any appellate rights.  Also, by pleading to the original indictment he did not have to admit that he possessed ammunition.  Finally, the district court did not characterize his federal prosecution as a benefit.  At sentencing, the district court said: "I'm looking here at protecting the public.  It's just paramount in this kind of case. It's why the U.S. Attorney's Office took this case as opposed to letting the state handle it, where he would have gotten a less significant sentence."  Because the district court did not characterize Garcia's federal prosecution as a benefit to him, this argument fails as well.

Additionally, Garcia has not shown that any perceived "benefit" from these facts influenced the district court's decision.  The district court repeatedly stressed

that the motivating factor behind the sentence was Garcia's criminal history and the need to protect the public.

Viewing the sentencing record as a whole, Garcia has not shown plain error in the procedure that resulted in his sentence.

## B.

In reviewing a sentence for substantive reasonableness, we consider the totality of the circumstances and will remand for resentencing only when "left with the definite and firm conviction that the district court committed a clear error of judgment in weighing the § 3553(a) factors by arriving at a sentence that lies outside the range of reasonable sentences dictated by the facts of the case." United States v. Pugh, 515 F.3d 1179, 1191 (11th Cir. 2008) (quotation omitted). The district court must impose a sentence that is "sufficient, but not greater than necessary, to comply with the purposes" of § 3553(a)(2), including the need to reflect the seriousness of the offense, provide just punishment, deter criminal conduct, and protect the public. 18 U.S.C. § 3553(a)(2). It must also consider "the nature and circumstances of the offense and the history and characteristics of the defendant." Id. § 3553(a)(1). The weight given to any particular factor "is a matter committed to the sound discretion of the district court," and the court's failure to discuss mitigating evidence does not mean that the court ignored or failed to consider it. United States v. Amedeo, 487 F.3d 823, 832–33 (11th Cir. 2007)

(quotation omitted).  Nevertheless, a district court abuses its discretion when it "(1) fails to afford consideration to relevant factors that were due significant weight, (2) gives significant weight to an improper or irrelevant factor, or (3) commits a clear error of judgment in considering the proper factors."  United States v. Irey, 612 F.3d 1160, 1189 (11th Cir. 2010) (en banc) (quotation omitted).

Garcia first argues that the sentence is substantively unreasonable for the same reasons he says it is procedurally unreasonable.  That is, he says the court relied on clearly erroneous facts.  However, as discussed above, the sentence is not procedurally unreasonable, and hence this argument fails.

Garcia next argues the district court failed to afford weight to mitigating factors, such as his mental health problems, his history of substance abuse, and the sexual assault he suffered as a minor.  But, to the contrary, the district court expressly told Garcia that it had "given consideration to your mental health problems, your personal characteristics."  The court ultimately decided that "your extensive criminal conduct does not warrant a downward variance and, furthermore, warrants a sentence at the highest end of the guidelines."  The district court also indicated that it reached its decision "[a]fter considering the Advisory Sentencing Guidelines and all of the factors identified in [18 U.S.C. § 3553(a)]."  Based on these statements, it appears the district court properly considered all of the relevant §3553(a) factors, and we cannot say that it clearly erred in weighing

each factor.  Therefore Garcia has not shown plain error in the substantive reasonableness of his sentence.

V.

Finally, Garcia challenges the constitutionality of 18 U.S.C. § 922(g), both on its face and as applied to him.

"We have repeatedly held that Section 922(g)(1) is not a facially unconstitutional exercise of Congress's power under the Commerce Clause because it contains an express jurisdictional requirement" that is satisfied when the firearm involved in the offense has at least "minimal nexus" to interstate commerce.  United States v. Jordan, 635 F.3d 1181, 1189 (11th Cir. 2011) (quotation omitted).  The "minimal nexus" requirement is met where the government demonstrates that the firearm in question has traveled in interstate commerce.  Id.  Here, the government submitted a factual basis, and Garcia admitted at the change of plea hearing, that the firearm in question was manufactured outside Florida, establishing the minimal nexus to interstate commerce.  Therefore Section 922(g)(1) is not unconstitutional as applied to Garcia.

**AFFIRMED.**