[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

No. 17-15300
Non-Argument Calendar

_____

D.C. Docket No. 1:17-cr-20088-CMA-4

UNITED STATES OF AMERICA,

Plaintiff - Appellee,

versus

BELKYS LEYVA,
a.k.a. Belkis Leyva,

Defendant - Appellant.

_____

Appeal from the United States District Court
for the Southern District of Florida

_____

(October 16, 2018)

Before WILSON, JORDAN and HULL, Circuit Judges.

PER CURIAM:

Belkys Leyva pleaded guilty to several counts of healthcare fraud.[1]  Leyva stipulated to knowingly conspiring with home health staffing companies to falsely certify that she provided physical therapy to Medicare beneficiaries.  The staffing companies paid Leyva for her false certifications and fraudulently submitted them to Medicare for reimbursement.  Leyva now appeals her 51-month sentence.  Leyva first argues that her sentence is procedurally unreasonable because the district court erroneously calculated the loss amount under U.S.S.G. § 2B1.1(b)(1)(I).  Second, Leyva argues the district court's additional enhancement under U.S.S.G. § 2B1.1(b)(7) constitutes impermissible double counting.

## I.

This Court reviews a district court's factual findings for clear error and its application of the Guidelines to those facts *de novo*.  *United States v. Kinard*, 472 F.3d 1294, 1297 n.3 (11th Cir. 2006).  A district court's amount of loss calculation is a factual finding reviewed for clear error.  *United States v. Moran*, 778 F.3d 942, 959, 974 (11th Cir. 2015).  The reviewing court will not disturb a district court's factual finding unless it is left with the definite and firm conviction that a mistake was made.  *United States v. Monzo*, 852 F.3d 1343, 1345 (11th Cir. 2017).

---

[1] Leyva pleaded guilty to conspiracy to commit healthcare and wire fraud under 18 U.S.C. § 1349, conspiracy to make false statements relating to healthcare matters under 18 U.S.C. § 371, and false statements relating to healthcare matters under 18 U.S.C. § 1035(a)(2).

The Guidelines instruct a district court to apply a 16-level enhancement when an offense involving fraud or deceit results in loss exceeding $1.5 million. U.S.S.G. § 2B1.1(b)(1)(I).  The loss amount "is the greater of the actual loss or intended loss."  *Id.* at § 2B1.1, cmt. n.3(A).  Actual loss is the reasonably foreseeable pecuniary harm that results from the crime.  *Id.* at § 2B1.1, cmt. n.3(A)(i).  Intended loss is the pecuniary harm that the defendant purposefully sought to inflict, even if it would have been impossible or unlikely to occur.  *Id.* at § 2B1.1, cmt. n.3(A)(ii).  Because the amount of loss is often difficult to precisely determine, a district court's amount of loss determination need only be a "reasonable estimate."  *Id.* at § 2B1.1, cmt. n.3(C); *United States v. Medina*, 485 F.3d 1291, 1304 (11th Cir. 2007).  The government has the burden of proving the loss amount by a preponderance of the evidence, which must be reliable and specific.  *Medina*, 483 F.3d at 1304.

When a defendant's conduct is fraudulent, a district court does not commit clear error by treating the amount transferred from the victim to the fraudulent enterprise as the starting point for calculating the loss amount.  *United States v. Campbell*, 765 F.3d 1291, 1305 (11th Cir. 2014).  Each coconspirator is responsible for the reasonably foreseeable acts of her coconspirators committed in furtherance of the conspiracy.  *Moran*, 778 F.3d at 974.  To impute the acts of one coconspirator to another, the district court must engage in a two-part inquiry.  The

district court must first, make individualized findings regarding the scope of criminal activity undertaken by the defendant, and second, determine if the coconspirators' acts were reasonably foreseeable. *Id.*

Leyva argues that the district court's amount of loss determination of $2,139,425.63 was erroneous because it includes losses attributable to invoices that contained her forged signature or that were submitted for services she lawfully rendered. Leyva also asserts that the loss amount was inflated by acts of her coconspirators that were not reasonably foreseeable, including submitting invoices to Medicare that were highly inflated and contained her forged signature.

First, the district court did not clearly err in basing the loss calculation on the total amount transferred from Medicare to the staffing companies. *See Campbell*, 765 F.3d at 1305. Leyva stipulated that the sum of invoices submitted under her name was $2,139,425.63. She did not prove that any portion of that amount was lawfully earned.[2] Second, the district court properly attributed to Leyva the acts of her coconspirators. *See Moran*, 778 F.3d at 974. The district court made sufficient individualized factual findings to support this determination, including Leyva's own stipulation that she "knew her falsified certifications would be going to home

---

[2] This Court is not persuaded by Leyva's argument on appeal that her corporate tax returns show that a large portion of the submitted invoices were for services she lawfully rendered. Reporting amounts received for "contract services" on a tax return does not prove any of those services were lawfully rendered. In light of the uncontroverted evidence presented by the Government, the district court did not clearly err in declining to reduce the loss amount.

4

healthcare agencies that would submit those forms to Medicare to get paid." The district court then properly recognized that it was reasonably foreseeable that Leyva's coconspirators could take her signature and place it on other forms in order to increase their earnings from the scheme. *See id.* at 975 (declining to limit coconspirator's loss amount "to the billings for only his individual patients or his personal actions").

Finally, the district court did not err in including losses from invoices that were allegedly inflated or contained Leyva's forged signature. The purpose of the scheme—in which Leyva knowingly participated—was to profit by making fraudulent claims to Medicare in order to receive payments for services that were never rendered. Consistent with that goal, it was reasonably foreseeable that Leyva's coconspirators would use her forged signature and submit inflated invoices in order to increase profits earned under the scheme. *See id.* Consequently, the district court did not clearly err in calculating the loss amount or applying the 16-level enhancement under the Guidelines.

## II.

Allegations of impermissible double counting under the Guidelines are reviewed *de novo*. *United States v. Dudley*, 463 F.3d 1221, 1226 (11th Cir. 2006). Double counting is impermissible when one part of the Guidelines is applied to increase the defendant's sentence for a kind of harm already fully accounted for by

5

application of another part of the Guidelines.  *United States v. Webb*, 665 F.3d 1380, 1382 (11th Cir. 2012).  "Absent a specific direction to the contrary," there is a presumption "that the Sentencing Commission intended to apply separate sections cumulatively . . . ."  *Id.*  Rebutting this presumption is a "tough task."  *Id.*

Leyva argues that the district court erred in applying an additional two-level enhancement under U.S.S.G. § 2B1.1(b)(7) because the harm was accounted for by the 16-level enhancement applied under U.S.S.G. § 2B1.1(b)(1)(I).  The plain language of the Guidelines makes clear that the 16-level enhancement under section 2B1.1(b)(1)(I) addresses the general harm from fraud.  Committing fraud against a government healthcare program is an aggravating factor, which is separately addressed by the two-level enhancement under section 2B1.1(b)(7).  *See* U.S.S.G. § 2B1.1(b)(2)-(9) (providing enhancements "[i]f the offense" falls into an enumerated category).  Because these are different harms, the district court did not engage in impermissible double counting.

Accordingly, we affirm the sentence as reasonable.

**AFFIRMED.**

6