[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT
_____

No. 18-11404
Non-Argument Calendar
_____

D.C. Docket No. 5:17-cr-00027-RH-4

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

versus

DECOREY WALKER,

Defendant-Appellant.

_____

Appeal from the United States District Court
for the Northern District of Florida
_____

(April 2, 2019)

Before MARCUS, WILSON, and ROSENBAUM, Circuit Judges.

PER CURIAM:

After pleading guilty, Decorey Walker was sentenced to serve 66 months in prison for conspiring to distribute and possess with intent to distribute heroin and methamphetamine, in violation of 21 U.S.C. §§ 841(a)(1), (b)(1)(C), and 846. He now appeals his sentence, arguing that, when calculating his guideline range, the district court erred in these two ways: (1) applying a two-level increase for possession of a firearm, *see* U.S.S.G. § 2D1.1(b)(1); and (2) denying his request for a mitigating-role reduction, *see* U.S.S.G. § 3B1.2. The government concedes error with regard to the firearm enhancement, but it argues that the role reduction was properly denied. We agree with the parties that the firearm enhancement was applied in error, but we affirm the court's denial of a role reduction.

## I.

In December 2015, law enforcement began an investigation following multiple heroin-overdose deaths and near-deaths in the Panama City, Florida, area. Through the investigation, which included search warrants, wiretaps, and undercover operations, law enforcement identified a loose network of dealers who sold heroin to users or lower-level dealers.

Walker was one of these lower-level dealers. He was arrested in January 2017 in possession of 0.2 grams of heroin and 7 grams of methamphetamine. In addition, his cell phone contained evidence of heroin and methamphetamine transactions with at least 25 different people in the Panama City area. In the following months,

2

intercepted communications demonstrated that Walker was distributing heroin for at least one of the higher-level dealers.

On June 19, 2017, Walker was in a car driven by a codefendant, John Elliott, when they were pulled over for an inoperable light by a Bay County Sheriff's Office deputy. Before the car stopped, the deputy observed the passenger throwing objects inside the vehicle. Then, when the car came to a stop, the deputy saw Walker exit the car on the passenger side and take off running. During a consent search of the car, the deputy found a firearm underneath the passenger seat. Elliot, who is described in the record as a drug user who occasionally sold drugs to support his own habit, was arrested for possession of drug paraphernalia.

In calculating Walker's recommended guideline range, the presentence investigation report ("PSR") applied an enhancement for possession of a firearm during the conspiracy, *see* U.S.S.G. § 2D1.1(b)(1), which increased his offense level by two levels. The PSR also stated that Walker was not entitled to a reduction for a mitigating role in the offense, *see* U.S.S.G. § 3B1.2.

Walker objected to these guideline issues, among others. With regard to the firearm enhancement, Walker argued that there was no evidence showing the firearm's connection to the conspiracy. As for his role in the offense, Walker maintained that a reduction was appropriate because he was a low-level dealer who worked for those higher in the conspiracy in order to support his own drug habits.

3

Walker presented his objections at sentencing.  The government responded that the firearm enhancement was appropriate because "Elliot had some drugs on him"—specifically heroin—at the traffic stop, and that Elliott had "indicated or stated to the arresting officer that it was Mr. Walker's gun."  (On appeal, however, the government concedes that there is no evidence to support these assertions.)  The government also noted that Walker ran from the scene, and the gun was found under his seat.  The government did not expressly address Walker's role in the offense.

The district court overruled Walker's objections.  Stating that "guns and drugs go together," the court found that the gun, whether it was Walker's or Elliott's, was reasonably foreseeable to Walker given his and Elliott's involvement in "a significant drug conspiracy for some period of time" and the Guidelines' recognition that "there's generally a connection" "when guns and drugs are present at the same location."  The court also cited Walker's flight from the car, which "indicate[d] that he understood drug activity to be afoot" and "might even support" an inference of knowledge about the gun.  As for Walker's role in the offense, the court found that he had been "held responsible for the amount of drugs that was part of his own criminal undertaking," and that his "role as to those drugs was not minor" within the meaning of the Guidelines manual.

Based on these rulings, the district court calculated Walker's guideline range at 57 to 71 months of imprisonment.  After hearing from the parties and considering

the PSR and the 18 U.S.C. § 3553(a) sentencing factors, the court imposed a sentence of 66 months.  Walker now appeals.

## II.

We review for clear error the determination that a defendant possessed a firearm for purposes of U.S.S.G. § 2D1.1(b)(1).[1]  *United States v. George*, 872 F.3d 1197, 1204 (11th Cir. 2017).  "Although review for clear error is deferential, a finding of fact must be supported by substantial evidence."  *United States v. Robertson*, 493 F.3d 1322, 1330 (11th Cir. 2007).  Where a district court bases a sentencing decision on a factual finding without adequate support in the record, we will vacate the sentence and remand, unless the error is harmless.  *United States v. Barner*, 572 F.3d 1239, 1251 (11th Cir. 2009); *see Williams v. United States*, 503 U.S. 193, 203 (1992) ("[O]nce the court of appeals has decided that the district court misapplied the Guidelines, a remand is appropriate unless the reviewing court concludes, on the record as a whole, that the error was harmless . . . .").

The guideline for drug-trafficking offenses, § 2D1.1, provides for a two-level increase to the offense level when "a dangerous weapon (including a firearm) was possessed."  U.S.S.G. § 2D1.1(b)(1).  To justify this sentencing enhancement, "the government bears the initial burden of showing, by a preponderance of the evidence,

---

[1] The government's concession of error on this issue is "entitled to and given great weight, but [it] do[es] not relieve [us] of the performance of the judicial function." *United States v. Esprit*, 841 F.3d 1235, 1237 n.1 (11th Cir. 2016) (quotation marks omitted).

that a firearm was 'present' at the site of the charged conduct or that the defendant possessed it during conduct associated with the offense of conviction." *George*, 872 F.3d at 1204.  This burden requires a showing "that the firearm had some purpose or effect with respect to the drug trafficking crime; its presence or involvement cannot be the result of accident or coincidence." *Id*. (quotation marks omitted).  After the government meets its initial burden, the burden shifts to the defendant to "establish that a connection between the weapon and the offense was clearly improbable." *Id*. (quotation marks omitted); *see* U.S.S.G. § 2D1.1, cmt. n.11(A).

The firearm enhancement "may be applied when the firearm is possessed by a co-conspirator." *United States v. Pham*, 463 F.3d 1239, 1245 (11th Cir. 2006).  If possession is by someone other than the defendant, the government must prove four elements: "(1) the possessor of the firearm was a co-conspirator, (2) the possession was in furtherance of the conspiracy, (3) the defendant was a member of the conspiracy at the time of possession, and (4) the co-conspirator possession was reasonably foreseeable by the defendant." *Id.* (quotation marks omitted).

Although we have recognized that "drugs and guns go together," *United States v. Lopez*, 649 F.3d 1222, 1242 (11th Cir. 2011), "the mere fact that a drug dealer possesses a firearm does not necessarily give rise to the firearms enhancement," *United States v. Stallings*, 463 F.3d 1218, 1221 (11th Cir. 2006). The burden is on the government to show that there is "some nexus beyond mere

6

possession" between the crime and the firearm.  *Id.*  In *Stallings*, for example, this Court held that the government failed to meet its burden "because the government provided no evidence connecting the pistols found in [the defendant's] home to his alleged drug activity and because the government never addressed the possibility that the weapons belonged to any of the other adults residing in his home."  *Id.*

Here, we agree with Walker and the government that the district court clearly erred in applying the § 2D1.1(b)(1) enhancement.  The government failed to show that there is "some nexus beyond mere possession" between the drug conspiracy and the firearm.  *See id.*  The district court appears to have based its decision on the government's assertion that drugs were found in the car during the coincidental traffic stop, which may have been enough to establish the required nexus.  But the government now concedes, and we agree, that there is no evidence in the record to support the presence of drugs in the car, nor does the record reveal any other connection between the conspiracy and the firearm.  Accordingly, the government failed to meet its initial burden of showing "that the firearm had some purpose or effect with respect to the drug trafficking crime."  *George*, 872 F.3d at 1204.  We therefore vacate and remand for resentencing without the § 2D1.1(b)(1) enhancement.

### III.

We review for clear error a district court's determination of the defendant's role in the offense. *United States v. De Varon*, 175 F.3d 930, 946 (11th Cir. 1999) (*en banc*). "Clear error review is deferential, and we will not disturb a district court's findings unless we are left with a definite and firm conviction that a mistake has been committed." *United States v. Monzo*, 852 F.3d 1343, 1345 (11th Cir. 2017) (quotation marks omitted). The defendant bears the burden of proving that he is entitled to a proposed mitigating-role reduction. *Id.*

A defendant who has a mitigating role in an offense may receive a decrease in his offense level. *See* U.S.S.G. § 3B1.2. Under § 3B1.2, courts should apply a two-level decrease for a "minor participant," a four-level decrease for a "minimal participant," and a three-level decrease for someone in between a minor and minimal participant. *Id.* Walker claims that he was a "minor participant," which means a participant "who is less culpable than most other participants, but whose role could not be described as minimal." *Id.*, cmt. n.5.

Under our *en banc* decision in *DeVaron*, "[t]wo principles guide the determination of whether a defendant played a minor role in the criminal scheme: (1) 'the defendant's role in the relevant conduct for which [he] has been held accountable at sentencing,' and (2) '[his] role as compared to that of other

8

participants in [his] relevant conduct.'" *United States v. Presendieu*, 880 F.3d 1228, 1249 (11th Cir. 2018) (quoting *DeVaron*, 175 F.3d at 940).

When evaluating a defendant's role in the offense, the district court must consider the totality of the circumstances. U.S.S.G. § 3B1.2, cmt. n.3(C). According to § 3B1.2's commentary, the factors courts should consider include "the degree to which the defendant understood the scope and structure of the criminal activity"; "the degree to which the defendant participated in planning or organizing the criminal activity"; "the degree to which the defendant exercised decision-making authority"; "the nature and extent of the defendant's participation in the commission of the criminal activity"; and "the degree to which the defendant stood to benefit from the criminal activity." *Id.*

Here, Walker has not shown that the district court clearly erred in declining to apply a minor-role reduction. Although Walker asserts that the court failed to consider his role in the larger conspiracy, the court correctly looked only to whether he "played a relatively minor role in the conduct for which [he] has already been held accountable—not a minor role in any larger criminal conspiracy." *See De Varon*, 175 F.3d at 944. Furthermore, while Walker may have been somewhat less culpable in the relevant conduct than others, like the higher-level dealer he distributed heroin for, we cannot say that the court clearly erred in finding that he was not entitled to a reduction. The PSR described the conspiracy as a loose

9

"network" with no real hierarchy or supervisory roles, and Walker bought drugs from and sold drugs to numerous people. On the whole, we are not left with a definite and firm conviction that the district court made a mistake. *See Monzo*, 852 F.3d at 1345. Accordingly, we affirm the court's denial of a minor-role reduction.

**AFFIRMED IN PART, VACATED IN PART AND REMANDED.**