[DO NOT PUBLISH]

In the

# United States Court of Appeals

## For the Eleventh Circuit

_____

No. 21-13788

Non-Argument Calendar

_____

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

*versus*

JORGE ALBERTO QUIJADA-MORENO,

Defendant-Appellant.

_____

Appeal from the United States District Court
for the Middle District of Florida
D.C. Docket No. 6:20-cr-00026-PGB-GJK-5

_____

Before WILSON, LUCK, and BRASHER, Circuit Judges.

PER CURIAM:

Jorge Alberto Quijada-Moreno appeals his 108-month prison sentence. Quijada-Moreno argues that the district court erred in finding that he played more than a minor role in the drug conspiracy. We affirm.

## I.

Quijada-Moreno pleaded guilty to conspiring to possess with the intent to distribute one kilogram or more of heroin, in violation of 21 U.S.C. section 846. His base offense level was thirty-four, but it was reduced by three levels for acceptance of responsibility and two levels because he was eligible for safety valve relief. Based on his offense level of twenty-nine, Quijada-Moreno's advisory guideline range was eighty-seven to 108 months' imprisonment. And because Quijada-Moreno was eligible for safety valve relief, the probation office recommended that the district court disregard the ten-year mandatory minimum sentence.

Before sentencing, Quijada-Moreno objected that his offense level should be reduced under guideline section 3B1.2 because he played a minor role in the drug conspiracy. He argued that he "was not involved in any other manner other than transporting the drugs and money" for the main coconspirator and "did as he was directed." He maintained that "he was merely a courier transporting drugs" and "was not fully aware of the scope and

structure" of the conspiracy. And he argued that he "did not participate in planning or organizing any of the deliveries," "had no decision-making authority or . . . influence over decision making," "had no discretion," and "was paid very little in comparison to the value of the drugs." According to Quijada-Moreno, he was "less culpable than the average participant" and "should not be held responsible to the same degree as the head" of the conspiracy "or the other individuals involved in the conspiracy" who "not only acted as couriers but also purchased drugs . . . to then sell" to customers.

The government disagreed with Quijada-Moreno's characterization of his role in the conspiracy, arguing that he was "an average participant" and was "not entitled to a minor role adjustment of any kind." The government argued that he was "being held accountable only for the amount of heroin that he was personally involved with, and not the entire amount that the conspiracy as a whole was involved with." And the government contended that Quijada-Moreno "actively participated and provided heroin" to coconspirators "for eventual distribution, as well as actively transporting heroin himself" from Chicago to Florida.

At sentencing, an agent with the Drug Enforcement Administration testified that the "main target of the investigation" was "bringing kilogram quantities of heroin" from Chicago and "distributing it here in Florida." The investigation revealed that Quijada-Moreno was a courier for the main coconspirator and traveled "from Chicago to Florida to pick up money here and bring it back to Chicago and also bring heroin down from Chicago" to Florida.

The agent testified that Quijada-Moreno met with the main coconspirator and other coconspirators in Chicago and, "on three or four occasions," provided heroin to other coconspirators so they could transport it from Chicago to Florida.

The agent testified that Quijada-Moreno was "right under" the main coconspirator in the conspiracy's hierarchy. The agent explained, "He was trusted enough that he was meeting with" the main coconspirator's "source of supply in Chicago to pick up the heroin," he "was trusted with bringing heroin down" to Florida, he "was trusted with bringing heroin to other couriers that were bringing it down" to Florida, and he was "trusted with the money from the sale of that heroin." The agent also testified that three coconspirators bought heroin from the main coconspirator to sell to their own respective customers.

The district court overruled Quijada-Moreno's minor role objection. The district court considered the "traditional factors," including Quijada-Moreno's "awareness of the scope" of the conspiracy "relative to his relevant conduct" and his "participation in planning or organizing, decision making authority, or influence." The district court determined that Quijada-Moreno's "relevant conduct" was eleven kilograms of heroin in "the transactions at issue" and emphasized that this was "not a one-time transaction." The district court explained that "status as a drug courier, in and of itself," was "not dispositive" of whether Quijada-Moreno was "entitled to receiving a downward adjustment" for his role "in the offense."

The district court found that Quijada-Moreno was "a trusted member" of the conspiracy with "the ability to go to the source of supply to pick up kilograms of heroin, which ha[d] quite a value." The district court also found that Quijada-Moreno "had the authority to hold on to those kilograms and deliver them" to coconspirators "when they came up to Chicago to pick them up from him three or four times." And he had "the ability to plan," "drop off heroin" in Florida, "and bring back money" to Chicago.

The district court didn't "see a tremendous distinction" between Quijada-Moreno's role and the involvement of other coconspirators. The district court found that they all "play[ed] the same integral role to advance the goals" of the conspiracy. "Somebody ha[d] to get the drugs from wherever they originate[d] into Chicago. Those people ha[d] to store [them], make sure [they] g[ot] to the intermediaries who br[ought] [them] to [Florida], and he played that role." Because Quijada-Moreno was "an average participant in the conspiracy," the district court found that he was not entitled to a minor role adjustment under section 3B1.2.

## II.

We review the district court's finding that Quijada-Moreno did not play a minor role in the conspiracy for clear error. *United States v. Rodriguez De Varon*, 175 F.3d 930, 937–38 (11th Cir. 1999). The district court's "ultimate determination" of Quijada-Moreno's "role in the offense" was "a fundamentally factual determination entitled to due deference," *see id.*, and "we will not disturb [the] district court's finding[] unless we are left with a definite

and firm conviction that a mistake ha[d] been committed," *United States v. Monzo*, 852 F.3d 1343, 1345 (11th Cir. 2017) (citation omitted).

### III.

Under section 3B1.2, a defendant may receive a downward adjustment to his offense level if he shows that he was "substantially less culpable than the average participant in the criminal activity." U.S.S.G. § 3B1.2, cmt. n.3(A). "Minimal participants may receive a four-level reduction, minor participants may receive a two-level reduction, and those whose participation falls in between may receive a three-level reduction." *Rodriguez De Varon*, 175 F.3d at 939 (citing § 3B1.2). A minor participant is a defendant "who is less culpable than most other participants in the criminal activity, but whose role could not be described as minimal." § 3B1.2, cmt. n.5.

The defendant has the burden of proving his role in the offense by a preponderance of the evidence. *Rodriguez De Varon*, 175 F.3d at 939. "It," then, "falls to the district court" to determine if he satisfied the burden. *Id.* "In making the ultimate determination of the defendant's role in the offense," the district court "has no duty to make any specific subsidiary factual findings." *Id.* "So long as the district court's decision is supported by the record and the court clearly resolves any *disputed* factual issues, a simple statement of the district court's conclusion is sufficient." *Id.* Though we've "urge[d] district courts to clarify their ultimate factual findings by more specific findings when possible," we've said "that a

district court is not required to make any specific findings other than the ultimate determination of the defendant's role in the offense." *Id.* at 940 (alteration adopted).

To determine the defendant's role in the offense, the district court "should be informed by two principles discerned from the [g]uidelines." *Id.* First, "the defendant's role in the relevant conduct for which []he has been held accountable at sentencing." *Id.* And second, his "role as compared to that of other participants in h[is] relevant conduct." *Id.* The district court "must consider the totality of the circumstances and the facts of the particular case." *United States v. Cabezas-Montano*, 949 F.3d 567, 606 (11th Cir. 2020).

The guidelines also provide a "non-exhaustive list of factors" that the district court "should consider" in making the determination:

> (i) the degree to which the defendant understood the scope and structure of the criminal activity;
>
> (ii) the degree to which the defendant participated in planning or organizing the criminal activity;
>
> (iii) the degree to which the defendant exercised decision-making authority or influenced the exercise of decision-making authority;
>
> (iv) the nature and extent of the defendant's participation in the commission of the criminal activity, including the acts the defendant performed and the

responsibility and discretion the defendant had in performing those acts; [and]

(v) the degree to which the defendant stood to benefit from the criminal activity.

§ 3B1.2, cmt. n.3(C).

Here, the district court didn't clearly err in finding that Quijada-Moreno was "an average participant in the conspiracy" and therefore not entitled to a downward adjustment under section 3B1.2. As required, the district court first considered Quijada-Moreno's "relevant conduct"—the transaction involving eleven kilograms of heroin for which Quijada-Moreno pleaded guilty and was "held accountable at sentencing." *See Rodriguez De Varon*, 175 F.3d at 939. The district court then compared Quijada-Moreno's role "to that of other participants," determining that Quijada-Moreno's participation was "average"—not minor—as compared to other coconspirators under the "totality of the circumstances." *See id.*; *Cabezas-Montano*, 949 F.3d at 606. The district court found that Quijada-Moreno "play[ed] the same integral role" as other coconspirators "to advance the goals" of the conspiracy.

Quijada-Moreno argues that the district court failed to address several section 3B1.2 factors in determining his role in the conspiracy. Specifically, he contends that the district court overlooked that he "was merely a crew member of a go-fast vessel transporting drugs," that he "was not aware of the scope and structure" of the conspiracy, that he "did not participate in planning or

organizing this trip," that he "had no decision-making authority or . . . influence over decision making," that he "had no discretion," and that he "did as he was told."

To be sure, the district court didn't discuss all these factors. But the district court's decision was "supported by the record" and didn't "involve a misapplication of a rule of law." *See Monzo*, 852 F.3d at 1345 ("The district court's 'choice between two permissible views of the evidence' concerning the defendant's role in the offense will rarely constitute clear error '[s]o long as the basis of the trial court's decision is supported by the record and does not involve a misapplication of a rule of law.'" (citation omitted)).

The district court's finding was based on the agent's testimony that Quijada-Moreno had a critical role in the conspiracy—that he was "right under" the main coconspirator in the hierarchy because he was trusted to meet with the heroin supplier, transport the heroin and money from Chicago to Florida, and provide the heroin to other couriers. And, while Quijada-Moreno argues that he was just a courier—"a crew member of a go-fast vessel transporting drugs"—we've said that "courier status in and of itself is not dispositive of whether a defendant is entitled to or precluded from receiving a downward adjustment for role in the offense." *Rodriguez De Varon*, 175 F.3d at 942.

Because the record supported the district court's finding that Quijada-Moreno's "role in the offense" was not minor, and because the district court didn't misapply a rule of law, we will not disturb the district court's factual determination that Quijada-Moreno

played more than a minor role in the conspiracy.  *See Monzo*, 852 F.3d at 1345.

**AFFIRMED.**